## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DANTE LEON MILON**                              **CIVIL ACTION**

**VERSUS**                                        **NO.  19-13061**

**DARREL VANNOY, WARDEN**                         **SECTION "D"(2)**

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Dante Leon Milon, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  On November 17, 2011, Milon was charged by bill of indictment in Terrebonne Parish with the second degree murder of Brandon Washington in violation of La. Rev. Stat. § 14:30.1.[3]

The Louisiana First Circuit Court of Appeal summarized the facts determined at trial as follows in relevant part:

> On August 15, 2010, around 10:00 p.m., officers of the Houma Police Department were dispatched to the scene of a shooting that occurred at Bryson's Discount Mobile Mart, a local convenience store.  The defendant had driven to the store along with two passengers, a male and a female.[1]  After the male passenger entered the store, Eric Thompson approached the defendant's vehicle and they began to converse.  Moments later, Thompson summoned Brandon Washington, the victim, who then approached the defendant's vehicle and had a brief verbal exchange with the defendant.  The defendant retrieved his gun and fired two shots, striking the victim, who died from a gunshot wound to his liver.  After the shooting, the defendant fled from the scene and discarded the gun.  The police investigation led to the defendant's identification as the shooter and arrest, and the defendant gave a recorded statement detailing his version of the events leading up to the shooting.  Despite disclosures by the defendant as to the supposed location where it was discarded, the police were unable to recover the murder weapon.
>
> [1]The female passenger, Rasheka Winslow, gave a recorded statement after the incident and testified at the trial.  During her police interview and at the trial, Winslow used both "Joseph" and "Jerome" in reference to her boyfriend, the male passenger who arrived at the store with Winslow and

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 1 of 9, Bill of Indictment, 11/17/10.

the defendant, and confirmed that his last name was Ross.  Ross did not testify at the trial, nor was any police statement by Ross admitted.

State v. Milon, No. No. 2012 KA 1610, 2013 WL 1791042, at *1 (La. App. 1st Cir. April 26, 2013); State Record Volume 2 of 9, Louisiana First Circuit Court of Appeal Opinion, 2012 KA 1610, page 2, April 26, 2013.

Milon was tried before a jury on November 28 and 29, 2011 and was found guilty as charged.[4]  The trial court denied Milon's motions for new trial and post-verdict judgment of acquittal.[5]  He was sentenced on December 14, 2011, to life in prison without benefit of parole, probation or suspension of sentence.[6]  The trial court denied Milon's motion to reconsider the sentence on January 4, 2012.[7]

Milon, through counsel, filed a timely direct appeal to the Louisiana First Circuit asserting that insufficient evidence supported his second degree murder conviction as he acted in self defense, or alternatively the evidence was sufficient only to support a conviction of manslaughter.[8]  Milon sought and was granted permission to file a pro se

---

[4]St. Rec. Vol. 1 of 9, Trial Minutes, 11/28/11; Trial Minutes, 11/29/11; Trial Transcript, 11/28/11; Trial Transcript, 11/29/11; Verdict, 11/29/11.

[5]St. Rec. Vol. 1 of 9, Motion for New Trial, 12/6/11; Motion for Post-Verdict Judgment of Acquittal, 12/6/11; Sentencing Minutes, 12/14/11; Sentencing Transcript, 12/14/11.

[6]St. Rec. Vol. 1 of 9, Sentencing Minutes, 12/14/11; Sentencing Transcript, 12/14/11.

[7]St. Rec. Vol. 1 of 9, Motion and Order to Reconsider Sentence, 12/21/11; Minute Entry, 1/4/12, Transcript, 1/4/12.

[8]St. Rec. Vol. 2 of 9, Appellant Brief, 2012-KA-1610, 10/18/12.

supplemental brief but never did so.[9]  On April 26, 2013, the Louisiana First Circuit affirmed the conviction and sentence finding sufficient evidence supported the guilty verdict.[10]

The Louisiana Supreme Court denied Milon's subsequent writ application without stated reasons on December 6, 2013.[11]  Milon's conviction became final ninety (90) days later, on March 6, 2014, when the time expired for Milon to file a petition for writ of certiorari with the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir.2003) (citing 28 U.S.C. § 2244(d)(1)(A); Flanagan v. Johnson, 154 F.3d 196, 200–01 (5th Cir.1998)); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir.1999) (citing 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup.Ct. R. 13(1).

On July 2, 2014, Milon submitted an application to the state trial court for post-conviction relief, asserting the following claims:[12] (1) He was denied effective assistance of counsel due to counsel's failure to perform proper pretrial discovery, investigate, call witnesses and file necessary motions.  (2) Counsel was ineffective in failing to object to

---

[9]St. Rec. Vol. 2 of 9, Motion for Leave of Court to File Pro Se Supplement Appeal Brief on the Merits, 2012 KA 1610, 10/29/12; 1st Cir. Order, 2012 KA 1610, 11/2/12.

[10] State v. Milon, No. 2012 KA 1610, 2013 WL 1791042, at *1-*7 (La. App. 1st Cir. Apr. 26, 2013); St. Rec. Vol. 2 of 9, 1st Cir. Opinion, 2012 KA 1610, pp. 3-11, 4/23/13.

[11]State v. Milon, 129 So.3d 533 (La. 2013); St. Rec. Vol. 2 of 9, La. S. Ct. Order, 2013-KH-1444, 12/6/13; La. S. Ct. Writ Application, 13 KH 1444, 6/12/13

[12]St. Record Vol. 2 of 9, Uniform Application for Post-Conviction Relief and Memorandum in Support of Post-Conviction Relief, dated 7/2/14.

the jury being allowed to take transcripts of Milon's post-arrest statement into the jury room and to take notes and use cell phones.  (4)  Counsel was ineffective in failing to obtain a mistrial after the jurors saw Milon in handcuffs.  (5)  Counsel was ineffective for failing to object to improper, prejudicial and inflammatory comments made by the prosecutor during opening statement and closing arguments. (6) Counsel was ineffective in failing to prepare and present a defense.  (7)  The cumulative effect of counsel's errors deprived him the right to a fair trial.  Milon submitted a supplemental brief raising the following additional claims:[13] (1) He was denied effective assistance of counsel when counsel failed to object to the coroner's testimony as a violation of the Confrontation Clause.  (2) He was denied a complete trial transcript on appeal.

Milon filed a second application for post-conviction relief raising the following additional claims:[14] (1) The trial judge violated Milon's rights to due process of law and equal protection when he did not recuse himself from the case and allowed a relative of his to preside as a juror.  (2) He was denied effective assistance of counsel when his trial counsel failed to exercise a challenge to the juror who was related to the trial judge or move to recuse the trial judge.  (3) A portion of the trial transcript is missing.

---

[13]St. Rec. Vol. 2 of 9, Supplement to Petitioner's Original Application for Post Conviction Relief, 4/15/16.

[14]St. Rec. Vol. 2 of 9, Supplement to Petitioner's Original Application for Post Conviction Relief, 2/7/17.

On October 26, 2017, the state trial court denied the original and supplemental applications.[15] On November 17, 2011, the trial court issued an order providing reasons for its judgment.[16] The trial court found that neither trial nor appellate counsel were deficient in their representation of petitioner under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2025 (1984); the juror was not a relative within the third degree and therefore there was no prejudice shown from the court's failure to dismiss him; defense counsel's failure to object was not an unreasonable trial strategy; and no portion of the trial transcript was missing.[17]

In the interim, Milon filed a writ application with the Louisiana First Circuit seeking a ruling on his applications for post conviction relief.[18] On November 16, 2017, the Louisiana First Circuit denied the writ application as moot since the trial court had already denied the application for post-conviction relief, as supplemented.[19]

---

[15]St. Rec. Vol. 2 of 9, Denial of Request for Post Conviction Relief Order and Finality and Exhaustion of Rights for State Post Conviction Relief, 10/26/17.

[16]St. Rec. Vol. 2 of 10, Reasons for Judgment, 11/17/11.

[17]Id., at pp. 5-11.

[18]Milon's writ application does not appear to be included in the State Court Record.

[19]State v. Milon, NO. 2017 KW 1274, 2017 WL 5499210 (La. App. 1st. Cir. Nov. 16, 2017); St. Rec. Vol. 2 of 9, 1st Cir. Order,1274, 11/16/17.

Milon then filed a writ application related to the denial of his application for post conviction relief and supplements.[20]  The Louisiana First Circuit denied the writ application, finding that Milon failed to include the necessary documentation, but allowed him until April 20, 2018, to file a new application.[21]

On July 17, 2018, the Louisiana First Court of Appeal denied Milon's new writ application without reasons.[22]  On September 24, 2019, the Louisiana Supreme Court denied Milon's related writ application finding Milon showed no lower court error.[23]

## II.    FEDERAL HABEAS PETITION

On October 8, 2019, Milon filed this petition for federal habeas corpus relief in which he asserts the following grounds for relief:[24]  (1) Insufficient evidence supported his conviction.   (2) Prosecutorial misconduct occurred when the prosecutor made inappropriate statements during voir dire, opening statement and closing arguments and the prosecutor allowed a witness to commit perjury.   (3) He received ineffective assistance of counsel, who failed to (a) adequately investigate and move to suppress

---

[20]St. Rec. Vol. 7 of 9, 1st Cir. Writ Application, 2017 KW 1605, 11/14/17; St. Rec. Vol. 8 of 9, 1st Cir. Supplemental Writ Application, 12/29/17.

[21]St. Rec. Vol. 5 of 9, 1st Cir. Opinion, 2017 KW 1605, 2/20/18.

[22]St. Rec. Vol. 2 of 9, 1st Cir. Opinion, No. 2018 KW 0456, 7/17/18.  The related writ application does not appear to be included in the State Court Record.

[23]State v. Cole, 279 So. 3d 909 (La. 2019) (per curiam); St. Rec. Vol. 4 of 9, La. S. Ct. Order, 2018-KH-01416, 9/24/19; La. S. Ct. Writ Application, 18 KH 1416, 8/22/18 (postmarked 8/10/18).

[24]Rec. Doc. No. 1.

Milon's statement; (b) move to suppress an unnecessarily suggestive photographic line-up; (c) object to the jury's use of cell phones, note taking and bringing Milon's transcribed statement back to the jury room; (d) successfully move for a mistrial when a juror saw Milon in handcuffs; (e) object to personal opinion and comments made by the prosecutor in opening statements and closing arguments; and (f) the cumulative effect of counsel's errors denied him of a fair trial. (4) His counsel was ineffective in failing to object to the coroner's testimony. (5) The trial judge erred in failing to remove a relative from the jury panel or, alternatively, recusing himself from the trial. (6) His counsel was ineffective in failing to move to strike the juror related to the trial judge or, alternatively, move to recuse the trial judge. (7) An incomplete transcript denied him his right to appeal.

The State filed an answer in response to Milon's petition in which it concedes that the federal petition is timely and that his claims are exhausted.[25] The State argues that Milon's claims lack merit and that the denial of relief by the state courts was not contrary to or an unreasonable application of federal law. Milon filed a traverse reiterating his claims.[26]

---

[25]Rec. Doc. No. 9.

[26]Rec. Doc. No. 16.

III.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[27] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Milon's petition, which, for reasons discussed below, is deemed filed in a federal court on October 8, 2019.[28] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes and I find that Milon's petition was timely filed and that he exhausted his claims.

---

[27]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Milon's signature on the original petition is October 8, 2019, which is the same date on which the clerk filed his petition.

IV.    <u>STANDARDS OF MERIT REVIEW</u>

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), <u>cert. denied</u>, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision " 'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]' "  <u>Penry v. Johnson</u>, 215 F.3d 504, 507 (5th Cir. 2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280-81 (5th Cir.), <u>cert. denied</u>, 531 U.S. 849 (2000)), <u>aff'd in part, rev'd in part on other grounds</u>, 532 U.S. 782 (2001); <u>Hill</u>, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts. Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry v. Johnson, 532 U.S.

782, 792-93 (2001); Hill, 210 F.3d at 485. The "critical point" in determining the

Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s

unreasonable-application clause if, and only if, it is so obvious that a clearly established

rule applies to a given set of facts that there could be no 'fairminded disagreement' on

the question." (citation omitted)  White v. Woodall, 134 S. Ct. 1697, 1706-07 (2014)

(citing Harrington v. Richter, 562 U.S. 86, 103 (2011)), and Knowles v. Mirzayance, 556

U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale before it can

apply to the facts at hand,' then by definition the rationale was not 'clearly established

at the time of the state-court decision.'" White, 134 S. Ct. at 1706 (quoting Yarborough

v. Alvarado, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the state court decision applied [a Supreme

Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford

v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S.

685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## V. INSUFFICIENT EVIDENCE (CLAIM NO. 1)

Milon claims that the evidence was insufficient to prove that he was guilty of second degree murder and that he should have been found not guilty on self-defense grounds or guilty of the lesser charge of manslaughter. He claims he had no specific intent to harm the victim, only to scare him away because he believed he was in imminent danger and feared for his own life.

Milon presented these claims to the Louisiana First Circuit on direct appeal. The court considered the claims under the standards set forth in Jackson v. Virginia, 443 U.S. 307 (1979), and related state case law, and found that the issue regarding intent concerned credibility and that there was sufficient evidence upon which the jury could have reasonably concluded that the victim did not pose an imminent threat to Milon, that Milon did not act in self-defense, sudden passion or heat of blood and that Milon was

12

guilty of second degree murder.[29]  This was the last reasoned opinion by a state court on this issue.  See Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . then presume that the unexplained decision adopted the same reasoning.").

Under Jackson, a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  Jackson, 443 U.S. at 319; Williams v. Cain, 408 F. App'x 817, 821 (5th Cir. 2011); Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008).  Thus, to determine whether commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.  Perez, 529 F.3d at 594 (citing Jackson, 443 U. S. at 324 n. 16).

The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  See McDaniel v. Brown, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 F. App'x 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial") (quoting Jackson, 443 U.S. at 324).

---

[29]Milon, 2013 WL 1791042, at *1-7; St. Rec. Vol. 2 of 9, 1st Cir. Opinion, 2012 KA 1610, pp. 3-11, 4/26/13.

Review of the sufficiency of the evidence, however, does <u>not</u> include review of the <u>weight</u> of the evidence or the <u>credibility</u> of the witnesses, because those determinations are the exclusive province of the jury.  <u>United States v. Young</u>, 107 F. App'x 442, 443 (5th Cir.2004) (citing <u>United States v. Garcia</u>, 995 F.2d 556, 561 (5th Cir. 1993)); <u>see</u> <u>Jackson</u>, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").  All credibility choices and conflicting inferences must be resolved in favor of the verdict.  <u>Ramirez v. Dretke</u>, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is <u>not</u> authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder.  <u>Weeks v. Scott</u>, 55 F.3d 1059, 1062 (5th Cir. 1995); <u>Alexander v. McCotter</u>, 775 F.2d 595, 598 (5th Cir. 1985).  In addition, "[t]he <u>Jackson</u> inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  <u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001) (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact.  <u>Perez</u>, 529 F.3d at 594; <u>Maes v. Thomas</u>, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this

14

court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.[30]

Milon was charged with and convicted of second degree murder, which is defined by Louisiana law as "the killing of a human being ... when the offender has a specific intent to kill or to inflict great bodily harm." La. Rev. Stat. § 14:30.1(A)(1). "Specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. § 14:10(1).

Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions. State v. Sharlhorne, 554 So.2d 1317, 1321 (La. App. 1st Cir.1989); State v. Tate, 851 So.2d 921, 930 (La.2003) (citing State v. Brooks, 505 So.2d 714, 717 (La.1987)). Specific intent to kill also can be implied by the intentional use of a deadly weapon, such as a knife or gun.

---

[30]"The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. § 15:438. However, on federal habeas corpus review, the court does not apply this state law "reasonable hypothesis" standard, and instead must apply Jackson. See Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992) (citing Schrader v. Whitley, 904 F.2d 282, 284 (5th Cir. 1990)). To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test. . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." State v. Porretto, 468 So. 2d 1142, 1146 (La. 1985); accord State v. Williams, 693 So. 2d 204, 208 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." State v. Maxie, 614 So. 2d 1318, 1321 (La. App. 3d Cir. 1993); accord State v. Williams, 693 So. 2d at 208. The appropriate standard for this court remains Jackson as applied under the parameters of the AEDPA.

State v. Collins, 43 So.3d 244, 251 (La. App. 1st Cir.2010) (citing State v. Brunet, 674 So.2d 344, 349 (1996)).

    A.    Self-Defense

Louisiana law provides that a homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. La. Rev. Stat. § 14:20(1). The State has the burden of proving that the defendant did not act in self-defense, and the standard on federal habeas review, in accordance with Jackson, is whether a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could find beyond a reasonable doubt that the homicide was not committed in self-defense. Trosclair v. Cain, Civ. Action No. 12-2958, 2014 WL 4374314, at *7 (E.D. La. Sept. 2, 2014) (citing State v. Lilly, 552 So.2d 1036, 1039 (La. App. 1st Cir.1989)).

In this case, the state court record establishes that the state courts reasonably rejected Milon's contention that the State failed to satisfy its burden of proof that he did not act in self-defense. Milon's recorded statement was played for the jury.[31] Milon claimed that he shot the victim as the victim was approaching him, but that he was not trying to kill him; rather he was trying to shoot him in the leg so he could get away.[32]

---

[31]St. Rec. Vol. 1 of 9, Trial Transcript, p. 29, 11/29/11.

[32]Id., at pp. 33, 41.

However, state witnesses offered a very different account from which the jury could amply find an unprovoked and deliberate killing by Milon.

Detective Lucas testified that witness statements indicated that the victim was running away from Milon when he was shot and the autopsy showed that he was shot in the back.[33]  Lucas further testified that he was never able to ascertain if the victim had a weapon and there was no gun, knife or any other weapon found around his body.[34]

Jana Adams testified that, as she was leaving her job at the convenience store, she witnessed the victim running from someone who was pointing a gun at him and she heard a gunshot.[35]  As she ran back into the store, she heard a second gunshot.[36]  Adams stated that she saw the victim fall in the store and that she did not see the victim holding any type of weapon.[37]  She witnessed the EMT cut off the victim's shirt and she neither saw a weapon hidden on his body nor was she aware of any weapon being found in the store.[38]

Rasheka Winslow was with Milon and her boyfriend on the night of the incident.[39] Winslow explained that she was friends with Milon's girlfriend and Winslow was dating

---

[33]Id., at pp. 33-34, 38.

[34]Id., p. 32.

[35]Id., at pp. 75-77.

[36]Id., at p. 77.

[37]Id., at p. 77.

[38]Id., at pp. 77-78.

[39]Id., at p. 88.

Ross's uncle, so she really did not want to testify as it would create family problems.[40]

Winslow initially testified that, as the victim approached their vehicle with his hands in

his jacket, her boyfriend told her to get out of the car, suspecting a conflict.[41]  She initially

claimed that she did not see anything; rather, she panicked, ran and heard a gunshot.[42]

She denied hearing Milon say, "The dude has tried to kill me, so I'm going to kill that

dude" and further denied seeing Milon digging for a gun.[43]  She claimed that she heard

the victim "fussing" at Milon before the shooting.[44]  She claimed that "someone took

something off" the victim after he was shot, but, because she ran away, she did not see

what happened.[45]  When asked again, Winslow admitted telling Detective Lucas in an

interview that Milon said that the victim had tried to kill him "so he was going to kill the

dude," but claimed she personally did not recall hearing Milon make the statement, rather

she heard someone else say it.[46]  When given another opportunity, she admitted she told

the detective that she saw Milon digging in the vehicle seat as the victim approached.[47]

---

[40]Id., at pp. 88, 93, 97-98.

[41]Id., at p. 92.

[42]Id., at p. 93.

[43]Id., at p. 94.

[44]Id., at pp. 94-95, 101.

[45]Id., at pp. 94, 99.

[46]Id., at pp. 95, 100.

[47]Id., at p. 95.

Winslow eventually admitted that she told the detective that Milon shot once from inside the vehicle and once from outside, but denied that she told him that Milon murdered Washington.[48]  After the audio of her statement to Detective Lucas was played for the jury, she admitted Milon murdered the victim.[49]

The medical evidence also contradicted Milon's self-defense theory.  Doctor Walker, a deputy coroner who performed an autopsy on the victim, testified that the victim died from hemorrhagic shock secondary to massive blood loss, which was a result of being shot in the back, with the bullet penetrating his liver.[50]

In addition, a finding that Milon acted in self-defense, without specific intent to kill or inflict great bodily harm, is not supported by the evidence of Milon's actions after the shooting, as explained by the Louisiana First Circuit.  Instead of remaining in the area to explain the situation to police, Milon fled the scene, leaving his companions.  Milon disposed of the gun, throwing it out the window of the vehicle in an area of a bridge that crosses Bayou Terrebonne,[51] and did not contact police to report the matter.

The testimony of a single, uncorroborated eyewitness, if found credible by the trier of fact, is constitutionally sufficient to support a conviction.  United States v. King, 703

---

[48]Id., at p. 96.

[49]Id., at pp. 96-97.

[50]Id., at pp. 46-56.

[51]Id., at p. 43.

F.2d 119, 125 (5th Cir. 1983); <u>accord</u> <u>Davis v. Cain</u>, 2016 WL 4537915, at *7 (E.D. La. May 24, 2016), <u>adopted</u>, 2016 WL 4529877 (E.D. La. Aug. 30, 2016); <u>Colbert v. Cain</u>, 2016 WL 4186551, at *11 (E.D. La. Apr. 12, 2016), <u>adopted</u>, 2016 WL 4161257 (E.D. La. Aug. 5, 2016); <u>Phillips v. Cain</u>, 2012 WL 2564926, at *13 (E.D. La. Apr. 11, 2012), <u>adopted</u>, 2012 WL 2565025 (E.D. La. July 2, 2012). Further, <u>Jackson</u> limits this court's review to the evidence before the trier of fact and does not allow the court to reassess the weight and credibility of the evidence. <u>See</u> <u>Jackson</u>, 443 U.S. at 319, 99 S.Ct. 2781 (finding that such matters are left to the factfinder). Specifically, determination of the credibility of a witness is solely within the province of the jury and is not to be disturbed on habeas review. <u>Passman v. Blackburn</u>, 652 F.2d 559, 569 (5th Cir. 1981) (that the jury chose to believe a witness whose credibility was challenged is not a question of constitutional dimensions); <u>Holderfield</u>, 903 F.Supp. at 1018 (citing <u>United States v. Hatch</u>, 926 F.2d 387, 399 (5th Cir. 1991)) (The habeas court should defer to the jury's resolution of credibility determinations and justifiable inferences of fact.).

Even if Washington was the aggressor, the evidence, when viewed in the light most favorable to the State, demonstrates that Milon shot Washington, who was unarmed, <u>in the back</u> as he was retreating from the altercation. Under such circumstances, Milon's claim of self-defense simply had no merit under Louisiana law. <u>See, e.g.</u>, <u>State v. Taylor</u>, 721 So. 2d 929, 932 (La. App. 1st Cir. 1998) ("Even if the victim . . . was initially the aggressor, it was unreasonable for defendant to respond with deadly force. This is

20

especially true after the unarmed victim attempted to withdraw from the conflict. It is particularly pertinent in this regard that the victim was unarmed and was stabbed in the back as he was attempting to flee."); State v. Dugas, 683 So. 2d 1253, 1257 (La. App. 3rd Cir. 1996) ("[S]hots in the back are inconsistent with self-defense; and shots while an unarmed victim moves away are inconsistent with self-defense.").

I find that a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could easily find beyond a reasonable doubt that the homicide was not committed in self-defense. The state courts' rejection of Milon's self-defense claim does not represent an unreasonable application of Supreme Court precedent to the facts of this case.

B.    Manslaughter

Milon asserts that a rational jury, viewing the evidence in a light most favorable to the prosecution, could have returned a verdict for "at most manslaughter," a lesser included offense.[52] Manslaughter is a homicide which would otherwise be a first or second degree murder, but is "committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." La. Rev. Stat. § 14:31(A)(1). Under Louisiana law, however, provocation does not reduce a homicide to manslaughter if the defendant's blood had cooled or an

_____

[52]Rec. Doc. No. 1-1, p. 10

21

average person's blood would have cooled.  State v. Leboeuf, 943 So.2d 1134, 1138 (La. App. 1st Cir. 2006), writ denied, 961 So.2d 1158 (La. 2007).

"Sudden passion" and "heat of blood" are mitigating factors which tend to lessen the degree of culpability of a homicide.  A defendant has the burden of proving these mitigating factors.  Thus, as the Louisiana First Circuit observed, the issue to be resolved is "whether a rational juror could have found insufficient evidence of provocation such that a reasonable person would have used deadly force."

As discussed above, the state court record, when viewed in the light most favorable to the State, establishes that the victim was not armed.  No one testified that the victim was seen armed with a gun or any other weapon, and no weapon was found at the scene.[53]  Instead, there was ample evidence that Milon reached for a gun and fired twice, as the victim was running away from him.[54]  Since Milon had a vehicle, there was no obstacle preventing him from leaving the scene, given Milon's alleged fearfulness.  Indeed, after Milon had shot and killed the victim, Milon fled the scene and disposed of the gun.[55]

The evidence supports the state courts' finding that a rational trier of fact, viewing the evidence in a light most favorable to the prosecution, could have concluded that the mitigating factors necessary to warrant a manslaughter conviction were not established.

_____

[53]Id., at p. 32.

[54]Id., at pp. 34, 38 (Lucas), 76-77(Adams), 96, 99 (Winslow).

[55]Id., at p. 43 (Lucas)

This finding does not represent an unreasonable application of Supreme Court precedent to the facts of this case.  Milon is not entitled to relief on this claim.

VI.    PROSECUTORIAL MISCONDUCT

Milon claims the prosecutor made improper, inflammatory comments and appealed to the emotions of the jurors during jury selection, opening statement and closing arguments.  He further claims that the State relied on the false testimony of Jana Adams to convict him.

The trial court did not directly address these claims of prosecutorial misconduct as a substantive matter.  Instead, it addressed them as part of Milon's ineffective assistance of counsel claims.[56]  Nonetheless, the trial court found that "[a] review of the prosecutor's remarks when taken in context with the entirety of his remarks and the instructions to the jury . . . show that they did not influence the jury nor did they result in an unfair trial."[57]  It further found that Milon's complaints of comments made during closing argument were also taken out of context and any prejudicial effect that may have occurred was cured by the jury instructions.[58]  In the last reasoned opinion, the Louisiana Supreme Court found that Milon failed to show any lower court error.[59]

---

[56]State Rec. Vol. 2 of 9, Reasons for Judgment, pp. 7-8, 11/17/11.

[57]Id., at p. 7.

[58]Id., at p. 8.

[59]Cole, 279 So. 3d at 909; St. Rec. Vol. 4 of 9, La. S. Ct. Order, 2018-KH-01416, 9/24/19.

For purposes of federal habeas, a claim of prosecutorial misconduct presents a mixed question of law and fact. Brazley v. Cain, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002) (per curiam). The court must determine whether the denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

The Fifth Circuit has provided a two-step process for determining whether prosecutorial misconduct has occurred. United States v. Wise, 221 F.3d 140, 152 (5th Cir. 2000). First, the court must determine whether the prosecutor made an improper remark. Id. To determine whether a remark is improper, the court must look at the context of those remarks. Id. It is well settled that the prosecution may permissibly argue to the jury what "inferences and conclusions" it should draw from the evidence, so long as the assertions are based on the evidence. United States v. Delgado, 672 F.3d 320, 336 (5th Cir. 2012) (citations omitted). "Moreover, 'unflattering characterizations of a defendant will not provoke a reversal when such descriptions are supported by the evidence.' " Id. at 336, (quoting United States v. Windom, 510 F.2d 989, 994 (5th Cir. 1975)) (finding no error in a prosecutor's reference to a defendant as a "con artist"). If an improper remark was made, the court must determine "whether the remark affected the substantial rights of the defendant." Wise, 221 F.3d at 152.

To prove that a remark prejudiced the substantial rights of a defendant, the petitioner must demonstrate "either persistent or pronounced misconduct or ... [that] the

evidence was so insubstantial that (in probability) but for the remarks no conviction would have occurred." Kirkpatrick v. Blackburn, 777 F.2d 272, 281 (5th Cir. 1985). Under this test, a petitioner must demonstrate that the comment rendered his trial "fundamentally unfair" by showing "a reasonable probability that the verdict might have been different had the trial been properly conducted." Rogers v. Lynaugh, 848 F.2d 606, 609 (5th Cir. 1988) (footnote and citations omitted). When determining the effect of the prosecutors' impermissible comments, this court considers three factors: "the magnitude of the prejudicial effect of the remark, the efficacy of any cautionary instruction, and the strength of the evidence of the defendant's guilt." United States v. Bermea, 30 F.3d 1539, 1563 (5th Cir. 1994), cert. denied, 513 U.S. 1156 (1995); United States v. Palmer, 37 F.3d 1080, 1085 (5th Cir. 1994).

Milon first asserts that the prosecutor made a statement during jury selection that the jury was to convict regardless whether the case was proved beyond a reasonable doubt. However, Milon quotes only part of the statement and takes it out of context.[60] The prosecutor, in an effort to determine if members of the venire would have difficulty returning a verdict even in a case where the evidence clearly supported a verdict, explained:[61]

> And you have the right now at this point in time in your position as a jury
> member be able to talk to us as attorneys. Because if you know in your

---

[60]Rec. Doc. No. 1-1, p. 11.

[61]State Rec. Vol. 1 of 4, Trial Transcript, pp. 40-41 (emphasis added), 11/28/11.

25

heart that no matter what I do, if I prove beyond a reasonable doubt, if I in essence – and I don't, so don't hold me to this; but if I showed you a video tape of this individual shooting the victim, Mr. Washington, dead, and you're back in the jury room and you're thinking in your head, I can't do this, I can't sentence to a – I can't sentence another man to life in prison, for whatever reason, then tell me now.  I don't think anything less of you.  It doesn't bother me in the least.  But I have to know.  Because not only is he entitled to a fair trial, the State is, the citizens, the victim is entitled to a fair trial.  <u>And if you can't go back there in the jury room and find somebody guilty, regardless of whether I prove beyond a reasonable doubt, then you have created the injustice</u>.  And I don't want that to happen.  And I know none of us – none of you want that to happen.  So now is the time you've got to tell me.  I think nothing less of anybody when they raise their hand.  Okay?  This is the one time.

While the prosecution's statement, "And if you can't go back there in the jury room and find somebody guilty, regardless of whether I prove beyond a reasonable doubt, then you have created the injustice," was badly phrased, it is clear from the rest of the statement that the prosecution meant that if a member of the venire could not convict despite evidence beyond a reasonable doubt, the prospective juror should inform the prosecution of such.  Furthermore, before the attorneys' questioning of the venire, the trial court instructed the venire regarding the presumption of innocence and the State's requirement to prove each element of the offense beyond a reasonable doubt.[62]  The prosecutor himself reminded the venire of the prosecution's burden of proof to prove Milon's guilt beyond a reasonable doubt and that the trial court would explain to the jurors the definition of "reasonable doubt."[63]  At the end of the case, the trial court in fact

[62]<u>Id.</u>, at pp. 33-34.

[63]<u>Id.</u>, at pp. 55-56

instructed the jury about the presumption of innocence and defined "reasonable doubt."[64] The prosecution's comment during venire was neither persistent nor pronounced enough to amount to a due process violation.

Milon next asserts that during opening statement the prosecutor made improper inflammatory statements and gave his personal opinion that Milon did not act in self-defense. Milon again does not include the entirety of the prosecutor's statement to which he objects. These statements, <u>in full context</u>, are as follows:[65]

> The first thing I want to bring to your attention is what the evidence will show. What the evidence is going to show is that this man, Dante Milon, in cold blood, murdered an individual by the name of Mr. Washington, Brandon Washington. Okay?

> ***

> Mr. Washington was not perfect. I'm not going to tell you he was. But he didn't deserve to take his life. If we can't protect the least of us, then the rest of us stand no chance. We protect the people who can't protect themselves. That's why we're here. All right?

> ***

> Additionally, you're going to hear some evidence about potentially, well, this may have been self defense. Detective Lucas is going to tell you there was never a weapon found anywhere near Mr. Washington. Certainly not a weapon that merited being shot in the back while Mr. Washington is running away. There was no gun pointing backwards as Mr. Washington was running away, there was no throwing of a knife, there was nothing. No weapon, You'll hear no evidence that anybody had a weapon on Mr. Washington's behalf. Okay?

> ***

---

[64]State Rec. Vol. 1 of 9, Trial Transcript, p. 119, 11/29/11.

[65]<u>Id.</u>, at pp. 9, 10, 12, 14.

I strongly suspect that you're going to hear a lot of this was a self defense type argument.  But let me remind you that in the testimony that you will hear presented by the state, there is no weapon.  There is no physical altercation that preceded Mr. Washington being shot by Dante Milon.  This wasn't a street fight that got out of hand, and as Mr. Washington is running away he gets shot.  That's not what this was.

In these instances, there was nothing inappropriate about the prosecutor's remarks.  The prosecutor was merely explaining what he believed the evidence would show, consistently with La. Code Crim. P. art. 766.[66]  In addition, the jury was specifically instructed that the prosecutor's opening statement was not evidence and that a decision should be based on the evidence in the case.[67]  It was also instructed before opening statements about the presumption of innocence and the prosecution's burden to prove petitioner's guilt beyond a reasonable doubt.[68]  The jury is presumed to have followed the instructions given by the trial judge.  Weeks v. Angelone, 528 U.S. 225, 234 (2000); Woods v. Johnson, 75 F.3d 1017, 1036 n.29 (5th Cir. 1996).  Finally, in the overall context of the trial, it cannot be concluded that Milon's conviction would not have resulted, but for the prosecutor's comments during opening statements.

---

[66]La. Code Crim P. art. 776 provides that "[t]he opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge."

[67]State Rec. Vol. 1 of 9, Trial Transcript, p. 4, 11/29/11.

[68]Id., at p. 4-6.

28

Under the circumstances of this case, Milon has failed to establish that the comments in the State's opening statement denied him due process or improperly impacted the verdict.

Milon also points to portions of the prosecution's closing argument which he contends were "inflammatory" and "highly emotional possessing the capacity to anger and arouse the jury and thereby divert them from the solemn responsibility to render a verdict based on the evidence."[69]  The portions of the prosecution's closing argument Milon complains denied him a fair trial are as follows:[70]

> This is about Dante Milon, and this is about an individual, Brandon Washington.  His sister is sitting right over here.  His mother died prior to the fact that we could get this case to trial.  He was a brother and he was a son.  Did he use cocaine?  Absolutely.  And I'm not going to tell you otherwise.
>
> ***
>
> Nowhere in the law, nowhere in our society do we allow preemptive murder.  It is not a legal defense.  I can't kill somebody on the thought process that they might kill me at some later point.  It doesn't work like that.  it's a defense, but it's not a defense to murder.  Okay?
>
> I asked you when we first started the grand jury – or the voir dire process, the jury selection process, if you could go back into that jury room and make that decision to send this individual away for life if I proved beyond a reasonable doubt that he killed, murdered, shot Brandon Washington.
>
> Ladies and gentlemen, I have done that.  I have absolutely done that.  You have heard from his own mouth he was the shooter.  No denial.  No second shooter; I pulled the trigger.  ID, done.  From his own mouth, his admission, whether it's true or not, what he is willing to at least admit is

---

[69]Rec. Doc. No. 1-1, pp. 16-17.

[70]State Rec. Vol. 1 of 9, Trial Transcript, pp. 105-10, 109-110, 11/29/11.

that I was trying to get him away from me, I was trying to shoot him in the leg.

***

I proved beyond a reasonable doubt. There is no other way that I can prove this case to y'all with any more proof. It is your obligation to find this gentleman guilty beyond a reasonable doubt of murder in the second degree of Brandon Washington. His family deserves that justice, the State, the prosecutors, the sheriff's office deserve that justice. Brandon Washington may not have been a good man, but he deserves at least that amount of justice. Because we will never know – and people do it – he might at some point in his life have done something good with his life. Dante Milon took that away from him.

***

The defense would have you believe that this was a preemptive murder; he had a right to kill Brandon Washington, because if I didn't kill him first, he was going to kill me at some time in the future.

Review of the prosecution's closing argument and rebuttal in their entirety establishes that the prosecutor summarized the testimony of each witness and the recorded statement of Winslow, during which she admitted Milon said he was "going to kill" the victim, that she got out of the car for fear of murder and that she witnessed Milon shoot the victim twice as Washington was running away.[71] To the extent that any argument by the prosecutor was inappropriate, the transcript shows that the State heavily relied on Winslow's statement to law enforcement, which, again, included her claim that Milon stated he was going to kill Washington and that he shot him twice as Washington ran away from him. I cannot conclude that the few comments by the prosecutor, after which the trial court instructed that the statements and arguments of the attorneys were

---

[71]Id., at pp. 108-109, 116-118.

not to be considered as evidence,[72] so infected the trial as a whole that it was rendered fundamentally unfair. The prosecutor's comments were limited in number and were neither persistent nor pronounced.

Again, when viewed as a whole, the record contains ample evidence apart from the prosecutor's remarks upon which the jury reasonably concluded that Milon was guilty of second degree murder, including his own admissions and recounting of the events that led to the shooting. In the overall context of this trial, it cannot be concluded that Milon's conviction would not have resulted, but for the prosecutor's comments during closing statement.

As to Milon's claim of prosecutorial misconduct relating to Adams's testimony, a State denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. Giglio v. United States, 405 U.S. 150, 766 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996). To obtain relief, the petitioner must show that (1) the testimony was actually false, (2) the State knew it was false, and (3) the testimony was material. Duncan v. Cockrell, 70 F. App'x 741, 744 (5th Cir. 2003); Kirkpatrick v. Whitley, 992 F.2d 491, 497 (5th Cir. 1993). False testimony is "material" only if there is any reasonable likelihood that it could have affected the jury's verdict. Duncan, 70 F. App'x at 744 (citing Nobles, 127 F.3d at 415).

---

[72]Id., at p. 127.

31

A claim of prosecutorial misconduct, including use of perjured testimony, presents a mixed question of law and fact. Brazley, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (citing United States v. Emueqbunam, 268 F.3d 377, 403-04 (6th Cir. 2001); Jones v. Gibson, 206 F.3d 946, 958 (10th Cir. 2000); United States v. Noriega, 117 F.3d 1206, 1218 (11th Cir. 1997); United States v. Spillone, 879 F.2d 514, 520 (9th Cir. 1989)); Thompson, 161 F.3d at 808. This court must determine whether the state courts' rulings were contrary to or an unreasonable application of federal law.

In this case, Milon asserts that Adams testified falsely when she said that no one came into the store after the shooting other than Eric Thompson and five females who were with him. He asserts that this testimony conflicted with her statement to Detective Detiveaux that an employee from the Pit Stop Restaurant next door came in and identified the victim.[73] He further asserts that the prosecution knew Adams's testimony was untrue and did not correct it.

Adams testified that she was leaving work at the Bryson Discount Mobil Mart, when she saw the victim running away from a man with a gun.[74] She said that after she heard the first gun shot, she ran back into the store and told the other worker to call the police because there was a shooting.[75] Adams testified that the victim came into the store

---

[73]Rec. Doc. No. 1-1. p, 19 (citing Rec. Doc. No. 1-7, p. 2).

[74]State Rec. Vol. 1 of 9, Trial Transcript, pp. 74-76, 11/29/11.

[75]Id., at pp. 76-77, 80.

and fell down.[76]  She stated that there were "quite a few people" in the store, estimating

five or six.[77]  Adams testified that she could see the victim the whole time and that the

people in the store were calling his name.[78]  She recalled another man, who knew the

victim's name, came inside the store and turned the victim over, put the victim's head in

his lap and tried to console him.[79]  She explained that she watched the people around the

victim who were trying to comfort him.[80]

According to a September 24, 2010, report by Detective Detiveaux, during an

interview, Adams told him an employee from the Pit Stop Restaurant came in and

identified the victim by the name of "Brandon."[81]  This report was not offered or admitted

into evidence at trial, although presumably was included in open file discovery.[82]

On this record, Milon has not shown that Adams's testimony was false, her failure

to mention the worker from the Pit Stop restaurant was purposeful, or more importantly

that Adams's failure to mention that the worker came into the store and identified the

witness was material.  As discussed above, Adams testified that she, another worker,

---

[76]Id., at pp. 77, 81.

[77]Id., at p. 81.

[78]Id.

[79]Id., at pp. 81-82.

[80]Id.

[81]Rec. Doc. No. 1-7, p. 2.

[82]State Rec. Vol. 1 of 4, Minute Entry, 6/15/11 (noting the "Assistant District Attorney offered open file discovery."

Washington, and five to six others were in the store.  She also testified that another man who knew the victim entered and tried to console him until emergency medical technicians arrived.  She did not identify anyone by name.  The record reflects that Adams was nervous during her testimony.[83]

Perjury is the offering of "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."  United States v. Dunnigan, 507 U.S. 87, 94 (1993).  Perjury is not established by mere contradictory testimony from witnesses or inconsistencies in a witness's testimony.  Kutzner v. Johnson, 242 F.3d 605, 609 (5th Cir. 2001); Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990).  Contradictory testimony from witnesses or inconsistencies in a witness's testimony at trial must be resolved by the trier of fact and do not suffice to establish perjury.  Koch, 907 F.2d at 531.

Based on this record, as found by the state courts, Milon has not established that Adams presented false testimony or that the State suborned perjury through her testimony.  Denial of relief on this issue was not contrary to or an unreasonable application of federal law.  Milon is not entitled to relief on this claim.

## VII.    EFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NOS. 3, 4 AND 6)

Milon alleges that he received ineffective assistance of counsel when his trial counsel failed to (1) investigate the case adequately resulting in her failure to move to

---

[83]State Rec. Vol. 1 of 4, Trial Transcript, p. 79, 11/29/11.

suppress his statement; (2) move to suppress misidentification and the photographic line-up for being unnecessarily suggestive; (3) object to the jury members taking notes, using cell phones in the middle of trial and allowing the jury to take a transcript of Milon's statement back to the jury room during a break; (4) move successfully for a mistrial when jurors saw Milon in handcuffs; (5) object to statements made during venire, opening statements and closing arguments; (6) object to Dr. Walker's testimony; (7) and move to strike the trial judge's nephew from the jury panel or move to recuse the trial judge. Milon also claims that the cumulative effect of counsel's errors denied him a fair trial.

The state trial court, addressing counsel's failure to suppress defendant's recorded statement and the pretrial identifications and photographic line-up, found that Detective Lucas testified at trial how Milon was identified as the murder suspect and that Milon gave a voluntary recorded statement to detectives.[84]    The trial court found that Milon's voluntary statement allowed the defense to argue self-defense without Milon having to take the witness stand and was clearly an issue of trial strategy.[85]    The trial court concluded that defense counsel's performance was not deficient.[86]    The trial court found there was no evidence to support Milon's claim that jurors brought copies of Milon's recorded statement into the jury room and, while it reminded jurors they could not take

---

[84]State Rec. Vol. 2 of 9, Reasons for Judgment, p. 6, 11/17/17.

[85]Id.

[86]Id.

notes, use cell phones or text during trial, no error occurred.[87]  The trial court found no evidence that any juror saw Milon wearing handcuffs and consequently no deficient performance.[88]  The trial court found, while counsel did not object to statements made by the prosecution, there was no prejudice given the court's jury instructions .[89]  The trial court reasoned that Dr. Walker's testimony regarding drugs found in the victim's system was evidence favorable to Milon, not detrimental.[90]  The trial court concluded that Milon failed to show defense counsel's failure to strike juror Walker, who had a law degree, was not an unreasonable trial strategy.[91]  Finally, the trial court found Milon failed to show he was denied effective assistance of counsel under <u>Strickland</u> and that his allegations were general, conclusory and inaccurate, so that no cumulative prejudice occurred.[92]  The Louisiana Supreme Court denied relief.[93]

In <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2025, 80 L.Ed. 2d 674 (1984), the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient

---

[87]<u>Id.</u>, at pp. 6-7.

[88]<u>Id.</u>, at p. 7.

[89]<u>Id.</u>, at pp. 7-8.

[90]<u>Id.</u>, at p. 9.

[91]<u>Id.</u>, at pp. 10-11.

[92]<u>Id.</u>, at pp. 8-9.

[93]<u>Milon</u>, 279 So.3d at 909; St. Rec. Vol. 4 of 9, La. S. Ct. Order, 2018-KH-1416, 9/24/19.

performance and resulting prejudice.  Id. at 697.  The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893.  A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 562 U.S. at 112 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105. Harrington recognized

the high level of deference owed to a state court's findings under <u>Strickland</u> in light of

the AEDPA:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so. The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

<u>Harrington</u>, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential."

<u>Cullen</u>, 563 U.S. at 190 (quoting <u>Knowles</u>, 556 U.S. at 123). This court must therefore

apply the "strong presumption" that counsel's strategy and defense tactics fall "within

the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable

unless clearly proven otherwise by the petitioner. <u>Id.</u>, 466 U.S. at 689; <u>Geiger v. Cain</u>,

540 F.3d 303, 309 (5th Cir. 2008); <u>Moore v. Johnson</u>, 194 F.3d 586, 591 (5th Cir. 1999).

In assessing counsel's performance, a federal habeas court must make every effort to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time

of trial. <u>Strickland</u>, 466 U.S. at 689; <u>Neal</u>, 286 F.3d at 236-37; <u>Clark v. Johnson</u>, 227

F.3d 273, 282-83 (5th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1167 (2001). Tactical decisions

when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  <u>Lamb v. Johnson</u>, 179 F.3d 352, 358 (5th Cir. 1999), <u>cert. denied</u>, 528 U.S. 1013 (1999) (citing <u>Rector v. Johnson</u>, 120 F.3d 551, 564 (5th Cir. 1997) and <u>Mann v. Scott</u>, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The issue of ineffective assistance of counsel is a mixed question of law and fact. <u>Clark v. Thaler</u>, 673 F.3d 410, 416 (5th Cir. 2012); <u>Woodfox</u>, 609 F.3d at 789.  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

A.    Failure to Investigate

Milon asserts that his trial counsel failed to investigate the case.  He claims that his counsel failed to interview and call witnesses such as Jerome Ross and Eric Thompson.[94]

"'A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial.' " (emphasis added, citation omitted) Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); Druery v. Thaler, 647 F.3d 535, 541 (5th Cir. 2011).  A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown.  Diaz v. Quarterman, 239 F. App'x 886, 890 (5th Cir. 2007) (citing Strickland, 466 U.S. at 696, recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.").  To prevail on such a claim, petitioner must provide factual support showing what exculpatory evidence further investigation would have revealed.  Moawad, 143 F.3d at 948; Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Davis v. Cain, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

In addition, it is well settled that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and

---

[94]Rec. Doc. No. 1-1, pp. 38-39.

because allegations of what a witness would have testified are largely speculative.'"
Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir.2003) (quoting Buckelew v. United
States, 575 F.2d 515, 521 (5th Cir.1978)); Bray v. Quarterman, 265 F. App'x 296, 298
(5th Cir.2008).  To prevail on such a claim, the petitioner must name the witness,
demonstrate that the witness was available to testify and would have done so, set out the
content of the witness's proposed testimony, and show that the testimony would have
been favorable to a particular defense.  Day v. Quarterman, 566 F.3d 527, 538 (5th
Cir.2009) (citing Bray, 265 F. App'x at 298).  The Fifth Circuit has "clarified that the
seemingly technical requirements of affirmatively showing availability and willingness
to testify '[are] not a matter of formalism.'"  Hooks v. Thaler, 394 F. App'x 79, 83 (5th
Cir. 2010) (quoting Woodfox, 609 F.3d at 808).

Milon has not met the foregoing requirements necessary successfully to assert
such a claim as it relates to Jerome Ross or Eric Thompson.  He presented no evidence
to either the state courts or this court, such as an affidavit from either witness showing
that they were available and would have testified in a manner beneficial to the defense.
He offers only self-serving, speculative and conclusory allegations that the proposed
witnesses would have in fact testified and would have done so consistently with his
version of the facts.  Therefore, petitioner has failed to meet his burden of proof with
respect to this claim as it relates to Ross and Thompson.  See, e.g., United States v.
Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims

of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); <u>Buniff v. Cain</u>, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); <u>Anthony v. Cain</u>, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); <u>Combs v. United States</u>, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); <u>Harris v. Director</u>, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Milon has failed to establish any deficiency or prejudice arising from his counsel's failure to investigate and subpoena witnesses. The denial of relief on this issue was not contrary to or an unreasonable application of <u>Strickland</u>.

B.    <u>Failure to Move to Suppress His Statement</u>

Milon asserts his counsel was ineffective for failing to move to suppress his recorded statement.

42

Initially, Milon was represented by retained counsel, John Thomas.[95]  Thomas filed omnibus pretrial motions, including a motion to suppress Milon's confession and the identification.[96]  In June 2011, Thomas sought and was given permission to withdraw as counsel of record due to Milon's failure to cooperate and meet his financial obligations.[97]  The trial court appointed the Office of the District Public Defender to represent Milon and continued a hearing on the motions without setting a date.[98]  Assistant Public Defender Kathryn Lirette filed omnibus motions, including a motion reserving the right to file a motion to suppress after reviewing the discovery.[99]  In the motion, Lirette stated that neither Milon nor counsel were aware of any evidence that might be subject to suppression, but requested the opportunity to file pertinent motions after discovery was completed if grounds for suppression were found to exist.[100] The record contains no indication that Lirette ever filed her own motions to suppress, adopted the motions filed by previous counsel or that there was ever a ruling on the motions filed by Thomas.

---

[95]State Rec. Vol. 1 of 9, Motion to Enroll as Counsel of Record, 9/1/10; Order, 9/3/10.

[96]State Rec. Vol. 1 of 9, Omnibus Motions and Order for Pre-Trial Motions, 1/25/11; Motion to Suppress Confession, 1/25/11; Motion to Suppress Evidence of Identification, 1/25/11.

[97]State Rec. Vol. 2 of 9, Motion to Withdraw as Counsel of Record, 6/9/11; Minute Entry, 6/15/11; Order 6/20/11.

[98]State Rec. Vol. 2 of 9, Minute Entry, 6/15/11.

[99]State Rec. Vol. 2 of 9, Motion Reserving Right to File Motion to Suppress After Discovery, 7/5/11.

[100]Id.

43

Milon contends that his statement was taken in violation of <u>Missouri v. Siebert</u>, 542 U.S. 600 (2004).  In <u>Siebert</u>, the United States Supreme Court considered the admissibility of statements obtained through a two-step interrogation technique to avoid <u>Miranda</u> warnings in which police first obtained an inadmissible confession without giving <u>Miranda</u> warnings, then issued the warnings and subsequently elicited a second, similar confession.

There record contains no such evidence.  Detective Lucas testified that Milon was brought into the interview room, advised of his rights, and completed a waiver of rights form, after which he was briefly interviewed but not asked specific questions, with no discussion of witness statements.[101]  When Milon began describing what happened, the interview was stopped  momentarily to start recording his statement.[102]  Lucas testified that Milon was not threatened or pressured and was cooperative and calm.[103]  He stated at no point did Milon become upset, irate or angry; rather, he was polite.[104]  He further testified that Milon did not appear to be under the influence of drugs or alcohol.[105]  A copy of the waiver of rights forms was admitted into evidence.[106]  Lucas explained that:

---

[101]State Rec. Vol. 1 of 9, Trial Transcript, pp. 30-31, 11/29/11.

[102]<u>Id.</u>, at p. 30.

[103]<u>Id.</u>, at pp. 30, 36.

[104]<u>Id.</u>, at p. 36.

[105]<u>Id.</u>, at p. 30.

[106]<u>Id.</u>, at pp. 31-32.

In my interviewing skills I've found to be more successful whenever I'm compassionate with the subject that I'm interviewing. I try to convey to him that I'm being as honest as I possibly can I'm not trying to have a bunch of smoke and mirrors just to convince him to tell me something that I want to hear. I've found that I'm able to get more honestly out of the individual I'm talking to as long as I can convey to him and convince him that I'm being honest with him as well.[107]

Lucas explained that one could see on the video that Milon was surprised when they told him the victim had died and that he took a moment to collect his thoughts and process everything.[108]

Given this evidence, there was no basis to move to suppress the statement based on Siebert. The record demonstrates that Milon was read and voluntarily waived his Miranda rights before he was questioned. While investigators did not immediately begin recording his statement until Milon voluntarily began telling them his version of the incident, there is no evidence that Milon was given his Miranda warnings after he began discussing the incident with investigators. Counsel is not ineffective for failing to urge a baseless motion. See Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections.").

---

[107]Id., at p. 33.

[108]Id., at p. 37.

Furthermore, the use of Milon's statement allowed defense counsel to present a case of self-defense without requiring Milon to testify at trial and being subjected to cross-examination.   Milon has not presented evidence sufficient to overcome the presumption that Lirette's decision not to file a motion to suppress was sound trial strategy.

Milon has not demonstrated that his counsel's actions fell below constitutional standards.   The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of <u>Strickland</u>.   Milon is not entitled to relief on this claim.

C.    <u>Failure to Move to Suppress the Identifications</u>

Milon next claims that his trial counsel was ineffective in failing to move to suppress the identifications.   He contends that Lashawn McKinley identified Milon as the perpetrator after being shown a singular photograph of Milon, which was inherently suggestive.   He further claims that the six-pack photographic line-up shown to Eric Thompson did not include any men matching the description given by Thompson and he had no other option but to pick Milon.

As noted above, Milon's initial counsel moved to suppress the identification.   The motion was never ruled upon and appeared to have been abandoned by Lirette.   Lirette presumably did not file a motion to suppress the identifications because she had no legal basis to do so and Milon admitted that he shot Washington.

46

The United States Supreme Court has stated that "reliability is the linchpin in determining the admissibility of identification testimony" under the Due Process Clause. Manson v. Brathwaite, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); see also United States v. Moody, 564 F.3d 754, 762 (5th Cir. 2009).  A two-step analysis is employed asking first, whether the identification procedure was impermissibly suggestive and second, whether under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification.  Coleman v. Quarterman, 456 F.3d 537, 544 (5th Cir. 2006) (quotations omitted).

Detective Lucas testified at trial that interviewed persons described the vehicle, the subject and gave detectives the name of a person they believed could have been the perpetrator based on previously seeing him at the store and the fact that they knew his girlfriend.[109]  Lucas interviewed Eric Thompson, who had been speaking with Milon, immediately before the shooting, and testified that Thompson identified Milon from a six-person photographic line-up.[110]  According to Thompson's witness statement, he previously worked with Milon, whom he knew by the nickname "Atlanta" or "ATL."[111]

---

[109]Id., at p. 35.

[110]Id., at pp. 34-35, 39.

[111]State Rec. Vol. 3 of 9, Houma Police Department Witness Statement, 8/15/10

According to the police report, LaShawn McKinley, Bryson's worker who came to the scene after the shooting, spoke to bystanders and learned that the shooter was a black male with short "twists" who drove a black Pontiac Grand Prix.[112] McKinley told the police that the details of the shooter's description reminded her of a customer who frequented the store named "Dante."[113] She said he had been at the store earlier in the day in the same vehicle described by witnesses and had been wearing a black shirt and black pants.[114] She said he had "ATL" tattooed on one of his arms.[115] She explained that he had spoken about having been shot at the home of his girlfriend, Dawn Ross, a few weeks earlier.[116]

Detectives searched the police department's database and found a report filed on July 25, 2010, identifying "Dante Milon" as the victim of a shooting and "Dawn Ross" as his girlfriend.[117] Detectives verified the details of the report with McKinley, who advised that Dante Milon was definitely the person she suspected was the shooter.[118] Detective Detiveaux obtained a color photograph of Milon from a Georgia law

---

[112]State Rec. Vol. 3 of 9, Police Narrative, pp. 5, 8, 9/24/10

[113]Id., at p. 8.

[114]Id.

[115]Id.

[116]Id.

[117]Id.

[118]Id.

enforcement agency, and the photograph was shown to McKinley, who identified the person as "Dante."[119]  A six-person photographic line-up was then shown to Thompson, who positively identified Milon as the shooter.[120]

A witness's prior acquaintance with the accused renders negligible the risk of misidentification.  See United States v. Hefferon, 314 F.3d 211, 219 (5th Cir. 2002); Heltzel v. Cowan, 518 F.2d 851 (6th Cir. 1975); United States v. Beckham, 505 F.2d 1316, 1319 (5th Cir. 1975); Weber v. Cain, 2008 WL 3876399, at *21 (E.D. La. Aug. 20, 2008).  When an identification is based on prior acquaintance, the issue is less one of reliability than of credibility, and doubts as to credibility are properly left to the jury. United States v. Lewis, 248 F.3d 1142, at *3 (5th Cir. 2001) (per curiam) (citing United States v. Fernandez–Roque, 703 F.2d 808, 814 (5th Cir. 1983)).

Given the overwhelming evidence that Milon was the shooter, including the statements of Winslow, whose identification was found in the back seat of the car, and Milon's own admission that he was the shooter, Milon has failed to establish either deficient performance or prejudice in failing to move to suppress the identifications of him by Thompson and McKinley.  He is not entitled to relief on this claim.

D.    Failure to Object to Jurors's Use of Cell Phones, Taking Notes and Bringing a Transcript of Milon's Statement to the Jury Room

---

[119]Id.; State Rec. Vol. 3 of 9, Police Narrative, p. 7, 11/12/10.

[120]State Rec., Vol 3. of 9, Police Narrative, p. 8, 11/12/10

Milon next claims that his trial counsel was ineffective for failing to object when jurors took notes, used cell phones during the trial and brought copies of the transcript of Milon's recorded statement to the jury room during a break.

During trial, the jury was provided with transcripts of Milon's recorded statements to assist them.[121]  The trial court explained that the transcripts were not evidence and that the jury would have to determine the evidence based on what they heard on the recording.[122]  The trial court explained that the transcripts would not be allowed in the jury room, so it was important for the jurors to pay close attention to the recording.[123]  The trial  court then took a brief recess to allow time for the prosecution's computer technician to set up the video recording, and the jurors were escorted into the jury room.[124]  When court resumed, the video and audio recording were played for the jury and Detective Lucas's testimony continued.[125]  At the conclusion of Lucas's testimony, the statements were colleted by the bailiff.[126]  At that time, the trial court reminded jurors that they were not to take notes or use cell phones.[127]

---

[121]State Rec. Vol.1 of 9, Trial Transcript, pp. 27-28, 11/29/11.

[122]Id.

[123]Id., at p. 28.

[124]Id.

[125]Id., at p. 29-44.

[126]Id., at p. 44.

[127]Id.

There is absolutely <u>no</u> evidence that the jurors took the transcripts into the jury room during the short break, and the record evidence confirms that the transcripts were collected in court at the conclusion of Detective Lucas's testimony.  Similarly, there is no evidence that any juror took notes or used a cell phone during the trial. Milon has failed to establish that denial of relief on this issue, was contrary to, or an unreasonable application, of <u>Strickland</u>.  He is not entitled to relief as to this claim.

E.     <u>Failure to Question a Juror Who Saw Milon Wearing Handcuffs</u>

Milon asserts that one of the jurors saw him wearing handcuffs during a break, and while defense counsel unsuccessfully moved for a mistrial, she was ineffective in that she "failed to shine light on the testimony of Eric Gautreaux to be later used on appeal.  In the alternative, counsel should have used Mr. Gautreaux [sic] testimony to remove him for the proceeding."[128]

The evidence shows that, when jurors returned from lunch, the trial court requested that they raise their hands if they saw Milon passing from the courtroom going up to the jail.[129]  Juror Eric Gautreaux was the sole juror to raise his hand.[130]  Except for Gautreaux, the jurors were removed from the courtroom and Gautreaux was asked to

---

[128]Rec. Doc. No. 1-1, p. 29.

[129]State Rec. Vol. 1 of 9, Trial Transcript, p. 58, 11/29/11.

[130]<u>Id.</u>, at pp. 58-59.

explain what he saw.[131]  Before Gautreaux could answer, Lirette moved for a mistrial, and the trial court directed that testimony would be taken first.[132]

Gautreaux was placed under oath and testified that he saw Milon out of the corner of his eye as they broke for lunch.[133]  He explained he saw one of the bailiffs in back of Milon and they were going in a door.[134]  Gautreaux confirmed he understood that Milon was presumed innocent and when the trial court stated, "You understand that the fact he may be in this back area, he may be going to the restroom, there may be any number of things and reasons he's in that–,", Gautreaux answered, "Absolutely.  And I seen he was not handcuffed or anything."[135]  Gautreaux confirmed that seeing Milon did not affect his ability to sit on the case as a juror and he understood the fact that Milon was in the back area had no relevance to the case.[136]  Neither attorney questioned the juror, although they were given the opportunity to do so.[137]

After Gautreaux was excused from the courtroom, Lirette stated that she did not wish to call any other witnesses because the other jurors acted "like they didn't even

---

[131]Id., at p. 59.

[132]Id., at p. 60.

[133]Id.

[134]Id.

[135]Id.

[136]Id.

[137]Id.

know what [the trial court] was talking about . . . ."[138]  She again requested a mistrial,

which the trial court denied.[139]  When the jurors were reseated, the trial court stated:[140]

> [S]ince the time we broke for lunch I want to make sure, ladies and
> gentleman, that none of you have seen anything, heard anything that would
> in any way give you the impression that the defendant is not presumed
> innocent, that in some way that there's some inference of guilt.  We want
> to make sure that your decision in this case will be based solely on what
> evidence comes from the witness stand.

The trial court then questioned each juror individually and each confirmed that he/she:

(1) had not heard or seen anything that would affect the ability to be fair and impartial

or the presumption of innocence; and (2) understood Milon was presumed innocent and

that evidence in the case had to come from the witness stand.[141]  The trial court again

instructed the jury that Milon was presumed innocent at all times and that the burden was

on the State to prove his guilt beyond a reasonable doubt.[142]

Lirette made another motion for a mistrial, outside the presence of the jury, which

the trial court denied, finding there was no showing that the presumption of innocence

---

[138]Id., at pp. 62-63.

[139]Id., at pp. 63-64.

[140]Id., at p. 65.

[141]Id., at pp. 65-70.

[142]Id., at p. 71.

was destroyed and that the jury had been instructed to disregard any extraneous matters not relative to the trial and the State's burden of proof.[143]

Lirette later filed a motion for new trial which was addressed before sentencing.[144] Lirette argued that Gautreaux was untruthful when he said that he did not see handcuffs and that a second juror made eye contact with Milon, but did not admit to seeing him.[145] The trial court, in denying the motion, noted that Milon was dressed in civilian clothes during trial and he was not handcuffed.[146] The court explained that all jurors were individually questioned and that "it was really apparent that the jury was really perplexed about what was going on."[147] The trial court concluded that based on the jurors' responses to the questions, the presumption of innocence was present and denied the motion.[148]

Milon has not demonstrated that his trial counsel acted deficiently or that any prejudice occurred. Defense counsel asked for a mistrial three times and moved for a new trial on the same basis. The trial court considered her motions and denied them based on the evidence. A counsel's unsuccessful efforts do not render counsel

---

[143] Id., at pp. 72-73.

[144] State Rec. Vol. 1 of 9, Motion for New Trial, 12/6/11; Sentencing Transcript, 12/14/11.

[145] State Rec. Vol. 1 of 9, Sentencing Transcript, p. 3, 12/14/11.

[146] Id., at p. 5.

[147] Id., at pp. 5-6.

[148] Id., at pp. 6-7.

ineffective.  <u>See</u> <u>Martinez v. Dretke</u>, 99 F. App'x 538, 543 (5th Cir. 2004)("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."); <u>Baker v. United States</u>, 2011 WL 3841690 (E.D. Va. Aug. 30, 2011) ("... the record shows [counsel] effectively advocated on Petitioner's behalf by making a timely, reasonable objection ... [t]hus, counsel's actions were effective notwithstanding their lack of success....").  While defense counsel chose not to question Gautreaux, Milon has not suggested what questions Lirette should have asked nor has he shown a reasonable probability that the outcome of the trial would have been different had Lirette questioned Gautreaux.

Milon has failed to establish that denial of relief on this issue, was contrary to, or an unreasonable application, of <u>Strickland</u>.  He is not entitled to relief as to this claim.

F.    <u>Failure to Object to Prosecution Statements Made During Venire, Opening Statements and Closing Arguments</u>

Milon next claims his counsel was ineffective for failing to object to statements the prosecution made during voir dire, opening statement and closing argument.

Milon's counsel did not act deficiently in failing to object to the prosecution's conduct.  As noted above in this report, none of the prosecution's statements amounted to misconduct or a due process violation given the court's instructions to the jury and the evidence.  Again, counsel is not ineffective for failing to urge a frivolous objection or legally meritless claim.  <u>See</u> <u>Johnson</u>, 306 F.3d at 255; <u>Smith</u>, 907 F.2d at 585 n.6; Koch,

907 F.2d at 527.  Milon has failed to demonstrate any prejudice resulting from his trial counsel's failure to object.

Neither prong of the Strickland test has been established.  Milon's claim of ineffective assistance of counsel for failing to object the prosecution's conduct during trial has no merit.

G.    Failure to Object to Dr. Walker's Testimony

Milon next argues that his counsel was ineffective in failing to object to Dr. Walker's testimony that an independent laboratory tested vitreous fluid samples and two of the samples came back positive for cocaine and benzodiazepine, also known as Xanax, Klonopin or Ativan.    Milon claims the testimony violated Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009).

Dr. Walker, a Terrebonne Parish deputy coroner, testified that he performed the autopsy on Brandon Washington on August 16, 2010.[149]  Dr. Walker testified that he sent a vitreous fluid sample to an independent laboratory and that 17 of 19 tests came back negative, but two tests came back positive for benzodiazepines and cocaine.[150]   Dr. Walker testified that those substances were not the cause of the victim's death; rather, the cause of death was hemorrhagic shock secondary to massive blood loss as a result of

---

[149]State Rec. Vol. 1 of 9, Trial Transcript, pp. 45-46, 11/29/11.

[150]Id., at pp. 47-48.

being shot through the liver.[151]  Dr. Walker testified that the presence of alcohol, benzodiazepines and cocaine should not have any effect on the gunshot wound.[152]

In <u>Melendez–Diaz</u>, the Supreme Court expanded the definition of testimonial statements to include statements that are "functionally identical to live, in-court testimony." 557 U.S. 305, 310–11 (2009).  The Court held that the prosecution violated the defendant's right to confrontation by admitting certificates of analysis identifying a substance found in the defendant's possession as cocaine.  <u>Id.</u> at 329.

More recently, the Supreme Court reiterated that "[u]nder settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know to be true."  <u>Williams v. Illinois</u>, 567 U.S. 50, 58 (2012). According to <u>Williams</u>, out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which the expert's opinion rests "are not offered for their truth and thus fall outside the scope of the Confrontation Clause."  <u>Id.</u> Moreover, out-of-court statements are testimonial only if they have "the primary purpose of accusing a targeted individual of engaging in criminal conduct" and, usually, they involve "formalized statements, such as affidavits, depositions, prior testimony, or confessions."  <u>Id.</u> at 2242.

---

[151] <u>Id.</u>, at pp. 49-53

[152] <u>Id.</u>, at p. 54.

In this case, it is undisputed that Dr. Walker sent the vitreous fluid to a laboratory to be tested and that he made those test results part of his autopsy report.[153]   While defense counsel did not object to admission of the evidence relating to the drugs found in the victim's vitreous fluid, Milon has not shown any prejudice based on her failure to do so. The admission of such evidence allowed the defense to argue that the drugs and alcohol in the victim's system affected his behavior and caused him to run toward Milon aggressively, scaring Milon and causing him to fear for his life, resulting in Milon shooting the victim to stop him from advancing.[154]   There is absolutely no evidence that the drugs and alcohol in Brandon Walker's system were the cause of his death, rather than the gunshot wound, and Milon has offered no evidence demonstrating otherwise.

Milon has shown no prejudice resulting from his counsel's failure to object to Dr. Walker's testimony.   He has shown no reasonable probability that the outcome of the trial would have been different had counsel objected to the testimony.   Milon has failed to establish that denial of relief on this issue was contrary to or an unreasonable application of <u>Strickland</u>.   He is not entitled to relief on this claim.

H.    <u>Failure to Move to Strike the Trial Judge's Nephew from the Jury Panel or Move to Recuse the Judge</u>

Milon argues that he received ineffective assistance of counsel when his trial counsel failed to challenge the selection of one juror, Benjamin Walker, whom he claims

---

[153]<u>Id.</u>, at pp. 46-48

[154]<u>Id.</u>, at pp. 110, 113-116.

is related to the trial judge.  He further claims his counsel was ineffective in failing to move to recuse the trial judge.

The juror, Benjamin Walker, explained that he went to Loyola Law School and graduated in 2004, but was never a practicing attorney.[155]  He stated that he was a blood relative of the trial judge, although he did not explain how he was related to the trial judge and certainly did not claim to be his nephew.[156]  Both the prosecution and the defense found him acceptable, and Walker ultimately served on the jury.[157]

The trial judge explained in his order denying Milon's application for post-conviction relief, as supplemented, that he is not Benjamin Walker's uncle nor is he related within the third degree to him and that he would not have recognized the juror as a relative if he had not been told by the juror.[158]  The trial judge speculated that defense counsel may have wanted Walker on the jury because he had a law degree and would be able to understand the legal issues to be decided in the case.[159]

La. Code Crim. P. art. 797(3) allows the State or defendant to challenge a juror for cause when there is a relationship "by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district

---

[155]State Rec. Vol. 1 of 9, Trial Transcript, pp. 26, 62-63, 68, 11/28/11.

[156]Id., at pp. 63-64.

[157]Id., at pp. 81-82.

[158]State Rec. Vol. 2 of 9, Reason's For Judgment, p. 11, 11/17/17.

[159]Id.

attorney, or defense counsel [ ] such that it is reasonable to conclude that it would influence the juror in arriving at a verdict." "[A]rticle 797(3) does not include judges in the category of persons that, by virtue of their relationship to a potential juror, entitle a party to challenge that juror for cause because it would be reasonable to conclude that the relationship would influence the juror in arriving at a verdict." State v. Mattire, 2012 WL 4335432, at * 13 (La. App. 1st Cir. Sept. 21, 2012), writ denied, 117 so.3d 506 (La. 2013). Because trial judges do not have a stake in the outcome of a case, when a party has not shown that a relationship between the judge and a juror could influence the juror in coming to a verdict, friends and first cousins of the trial judge have been allowed to serve on a jury. Id. at pp. 11-13.

Milon has shown no basis for any court to find that Benjamin Walker was biased against him or otherwise unqualified to sit on the jury. Given that there was nothing to indicate that Walker was biased simply because he knew the trial judge, counsel properly determined there was no basis to request his removal. Without some basis to have objected to or move to strike the juror, counsel did not act deficiently or prejudicially in allowing him to remain on the jury. Counsel is not ineffective for failing to assert a meritless objection or challenge a qualified juror. Johnson v. Cockrell, 306 F.3d at 255; Smith, 907 F.2d at 585 n.6; Koch, 907 F.2d at 527.

An attorney's decision whether to request removal of a juror is generally a matter of trial strategy. See Ray v. Johnson, 196 F.3d 1257, at *1 (5th Cir. 1999); Romero v.

Lynaugh, 884 F.2d 871, 878 (5th Cir. 1989); Wash v. Hood, 2007 WL 3047149 (N.D.

Miss. Oct. 17, 2007) (citing Teague v. Scott, 60 F.3d 1167, 1172 (5th Cir. 1995)).

Counsel's decision in this regard is entitled to a strong presumption of reasonableness.

Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (recognizing a strong presumption

that strategic or tactical decisions made after adequate investigation fall within the wide

range of objectively reasonable professional assistance).  This record establishes that

counsel acted reasonably – not constitutionally ineffectively – concerning this juror.

Similarly, there was no basis to move to recuse the trial judge.  La. Rev. Stat. §

671 (A) provides:

> A. In a criminal case a judge of any court, trial or appellate, shall be
> recused when he:
> (1) Is biased, prejudiced, or personally interested in the cause to such an
> extent that he would be unable to conduct a fair and impartial trial;
> (2) Is the spouse of the accused, of the party injured, of an attorney
> employed in the cause, or of the district attorney; or is related to the
> accused or the party injured, or to the spouse of the accused or party
> injured, within the fourth degree; or is related to an attorney employed in
> the cause or to the district attorney, or to the spouse of either, within the
> second degree;
> (3) Has been employed or consulted as an attorney in the cause, or has been
> associated with an attorney during the latter's employment in the cause;
> (4) Is a witness in the cause;
> (5) Has performed a judicial act in the case in another court; or
> (6) Would be unable, for any other reason, to conduct a fair and impartial
> trial.

Milon has not shown that any of the foregoing provisions apply in his case.  The

statute does not require recusal of a trial judge based on a familial relationship with a

juror. The record contains no indication that the trial judge was biased or conducted the trial unfairly or with partiality. Any motion to recuse would have been frivolous. Thus, Milon has shown neither deficient performance or prejudice as a result of the failure to recuse the trial judge. The state courts' decision rejecting his claims of ineffective assistance of trial counsel was neither contrary to nor an unreasonable application of Strickland.

I.    Cumulative Error

Milon's final claim of ineffective assistance of counsel is that his counsel's combined errors created cumulative prejudice entitling him to habeas relief. The United States Fifth Circuit has recognized that "although rare," "instances of cumulative trial errors may 'fit the Supreme Court's description of a denial of due process as 'the failure to observe that fundamental fairness essential to the very concept of justice.' " Perez v. Dretke, 172 F. App'x 76, 81–82 (5th Cir. 2006) (quoting Derden v. McNeel, 978 F.2d 1453, 1457 (5th Cir. 1992)).

However, in Derden, the Fifth Circuit held that "federal habeas corpus relief may only be granted for cumulative errors in the conduct of a state trial where (1) the individual errors involved matters of constitutional dimension rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'"

Derden, 978 F.2d at 1454 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).  The court later clarified when such errors may be considered:

> Under this doctrine, "errors of state law, including evidentiary errors, are not cognizable in habeas corpus." [Derden, 978 F.2d] at 1458 (emphasis added).  Instead, such errors are of the requisite constitutional nature only if they "infuse[ ] the trial with unfairness as to deny due process of law." Id. (quoting [Lisenba v. California, 314 U.S. 219, 228 (1941) ] ).

Perez, 172 F. App'x at 82 (emphasis in original).

Perez did not specifically address whether a federal habeas claim could be made for the accumulation of deficiencies in the performance of counsel under Strickland.  To evaluate such a claim, this court must review the individual contentions of ineffective assistance, and if they are meritless, that result cannot be changed simply by asserting the same claims collectively.  It is well settled that "ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions." United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006) (citing Miller, 200 F.3d at 286 n.6); Sholes v. Cain, 370 F. App'x 531, 535 (5th Cir. 2010).  As the Fifth Circuit has noted with respect to analogous claims of cumulative error by counsel: "Twenty times zero equals zero." Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987).

The undersigned has reviewed each of the alleged errors of trial counsel.  None demonstrate an error in counsel's performance that could have caused any cumulative prejudicial effect.  See Turner v. Quarterman, 481 F.3d 292, 301 (5th Cir. 2007) (citing Derden, 978 F.2d at 1454, 1461 (meritless claims or claims that are not prejudicial cannot

be cumulated regardless of the total number raised)).  Milon has failed to establish that

denial of relief on this issue, or any facet of his ineffective assistance of counsel claim

was contrary to or an unreasonable application of Supreme Court precedent, including

but not limited to Strickland.

VIII.   FAILURE TO RECUSE OR SUA SPONTE STRIKE JUROR

Milon claims that the trial judge erred in failing to recuse himself or strike

Benjamin Walker from the jury venire sua sponte.

 "[T]he floor established by the Due Process Clause clearly requires 'a fair trial in

a fair tribunal,' before a judge with no actual bias against the defendant or interest in the

outcome of his particular case." (citations omitted) Bracy v. Gramley, 520 U.S. 899,

904-05 (1997); Buntion v. Quarterman, 524 F.3d 664, 672 (5th Cir. 2008); Samuel v.

Warden, Avoyelles Correctional Center, 51 F. App'x 483, 2002 WL 31319336, at *1 (5th

Cir. Sept. 30, 2002).  Federal and Louisiana precedent presume that trial judges act fairly

and impartially, and the burden is on the defendant to prove otherwise. Bigby v. Dretke,

402 F.3d 551, 558 (5th Cir. 2005) (citing Bracy, 520 U.S. at 909); State v. White, 968

So.2d 901 (La. App. 2d Cir. 2007); State v. Dooley, 882 So.2d 731 (La. App. 2d Cir.

2004), writ denied, 896 So.2d 30 (La. 2005).

For the reasons explained above, there was no legal basis to strike Benjamin

Walker from the jury for cause or for the trial judge to recuse himself.  Milon has failed

to establish that denial of relief on this issue was contrary to or an unreasonable application of Supreme Court precedent.

IX.    INCOMPLETE TRANSCRIPT

Milon's final claim is that he was denied the right to a full trial transcript, thereby denying him complete appellate review.  He claims that a hearing on July 11, 2011, should have been transcribed.  He further asserts that several bench conferences relating to jurors Walker and Gautreaux were not transcribed.

The Louisiana Supreme Court denied writs finding no lower court error in concluding that Milon was not entitled to relief as to this claim.[160]

It is true that a criminal defendant has the right to adequate appellate and other review of his conviction based upon a sufficiently complete and accurate record.  Mayer v. City of Chicago, 404 U.S. 189, 198 (1971).  However, the Supreme Court has not held that due process requires a verbatim transcript of the entire proceedings or that an incomplete record confers automatic entitlement to relief.  To prevail on a claim that the record was inadequate, a petitioner must prove that the missing portion of the transcript actually prejudiced his appeal in some manner.  Green v. Johnson, 160 F.3d 1029, 1045 (5th Cir. 1998) ("[B]arring a showing that the [failure to record bench conferences during trial] resulted in 'actual prejudice,' habeas relief is unwarranted." (citation omitted) ); see also Mullen v. Blackburn, 808 F.2d 1143, 1146 (5th Cir. 1987) (finding petitioner failed

---

[160]Milon, 279 So. 3d at 909; State Rec. Vol. 4 of 9, La. S. Ct. Order, 18-KH-1416, 9/24/19.

to show the absence of voir dire transcript prejudiced his appeal); <u>Bozeman v. Cain</u>, Civ. Action No. 09-8423, 2010 WL 2977393, at \*4 (E.D. La. June 7, 2010), <u>report and recommendation adopted</u>, 2010 WL 2977402 (E.D. La. July 20, 2010) (finding that petitioner's claim failed when there was no actual prejudice resulting from the failure to transcript a bench conference).

Milon has made no showing of prejudice in this case.  On the contrary, the record was wholly adequate for resolution of the claims that were actually asserted on appeal. When, as here, the missing pretrial hearing transcript and the several untranscribed bench conferences, one during voir dire and the others regarding a matter relating to whether jurors saw Milon wearing handcuffs, were immaterial to the claim asserted on appeal, the record is adequate for full appellate review, and there was no denial of a meaningful appeal.  <u>See</u> <u>Schwander v. Blackburn</u>, 750 F.2d 494, 497–98 (5th Cir. 1985) (explaining that petitioner was not denied a meaningful appeal where the omitted portions of the trial transcript were immaterial to the error alleged on direct appeal); <u>Thomas v. Cain</u>, 2013 WL 5960808, at \*5 (E.D. La. Nov. 6, 2013) (finding that the record was adequate for resolution of appellate claims).

Milon has demonstrated no basis to transcribe the July 11, 2011 hearing. The minutes reflect that the trial was continued on the motion of the prosecution and a pretrial hearing was scheduled for July 28, 2011.[161]  While Milon contends that a transcript

---

[161]State Rec. Vol. 1 of 9, Minute Entry, 7/11/11.

would show that the prosecution successfully moved to dismiss the motions filed by previous defense counsel,[162] even if true, that is of no consequence.  Defense attorney Lirette filed her own motions on July 5, 2011. While noting that neither defendant nor his counsel "is currently aware of any evidence that might be subject to suppression," she requested permission to file motions to suppress after reviewing discovery.[163]  At an August 10, 2011 hearing, defense counsel stated that the discovery motions were satisfied by open file discovery.[164]  Lirette did not file any motions to suppress and, as addressed above, Milon has not shown counsel was ineffective in failing to do so.  It is well-settled that Louisiana law deems claims of ineffective assistance of trial counsel more properly asserted in an application for post-conviction relief in the district court rather than on direct appeal.  State v. Watson, 817 So. 2d 81, 84 (La. 2002); State v. Truitt, 500 So. 2d 355, 359 (La. 1987); see State v. Smothers, 836 So. 2d 559 (La. App. 5th Cir. 2002) (refusing to consider ineffective assistance of counsel claim on direct appeal); State v. Hall, 843 So. 2d 488 (La. App. 4th Cir. 2003) (same); State v. Griffin, 839 So. 2d 1148 (La. App. 3d Cir. 2003) (same).  Thus, Milon has not shown that any missing hearing transcript was a substantial and significant portion of the record which prohibited appellate counsel from adequate review of the record for purposes of asserting

---

[162]Rec. Doc No. 1-1, p. 55; Rec. Doc No. 16, pp. 51-52.

[163]State Rec., Vol. 1 of 9, Omnibus Motions including Motion Reserving Right To File Motion to Suppress After Discovery, 7/5/11.

[164]State Rec. Vol. 1 of 9, Minute Entry, 8/10/11.

claims on appeal since the state appellate court likely would have deferred any claims of ineffective assistance of counsel to post-conviction review, which Milon later pursued.

Milon has not shown that the unrecorded bench conference concerning juror Walker constituted a significant part of the trial record.  According to the voir dire transcript, when Benjamin Walker advised that he was a "blood relative of Judge Walker," the prosecutor stated, "I think he had raised that up earlier."[165]  The transcript contains no other discussion about Benjamin Walker's relation to the trial judge.  The transcript reflects that there were two discussions off the record before Benjamin Walker made his statement on the record.[166]  The transcript specifically reflects that one of those discussions was about potential juror Brenda Barrow, who was excused.[167]  The transcript does not reflect the topic of the other off-the-record discussion.[168]  Regardless, the trial judge and counsel were all aware of the alleged family relationship between Benjamin Walker and the trial judge.  Milon has not show how the alleged portion of the transcript would have altered the outcome of his appeal.  <u>Mullen v. Blackburn</u>, 808 F.2d 1143, 1146 (5th Cir. 1987).

---

[165]State Rec. Vol. 1 of 9, trial transcript, pp. 63-64, 11/28/11.

[166]<u>Id.</u>, at p. 17.

[167]<u>Id.</u>, at pp. 17-18.

[168]<u>Id.</u>, at p. 17.

Finally, Milon asserts that he was denied a transcript of several bench conferences relating to whether juror Gautreaux or any other juror saw him in handcuffs. He claims that the bench conferences would have shown that the trial court admitted that "numerous" other jurors saw Milon during the lunch recess and that defense counsel requested to speak with the officer who escorted Milon out of the courtroom, but the officer could not be identified.[169]

The record reflects that, following a lunch recess, the trial court held an off-the-record bench conference.[170] It is clear from the discussion on the record which followed that the bench conference involved whether any jurors had witnessed Milon passing from the courtroom when they broke for lunch.[171] After juror Gautreaux admitted that he had seen Milon, a second unrecorded bench conference was held.[172] Gautreaux was then questioned outside the presence of other jurors.[173] Defense counsel specifically stated on the record that she did not want to call any other witnesses and that the other jurors acted as if they "didn't even know what [the trial judge was] talking about," but nonetheless requested a mistrial.[174] The jurors were returned to the courtroom for

---

[169]Rec. Doc. No. 1-11, pp. 56-58.

[170]State Rec. Vol. 1 of 9, Trial Transcript, p. 57, 11/28/11.

[171]Id., at pp. 57-59.

[172]Id., at p. 59.

[173]Id., at pp. 59-62.

[174]Id., at p. 63.

instructions, but before the instructions a third unrecorded bench conference occurred.[175] The trial court then questioned each juror individually about the presumption of innocence and the inability to be fair and impartial.[176]  Defense counsel then requested to make another motion, at which time a fourth unrecorded bench conference occurred.[177] The jury was excused and Lirette re-urged her motion for a mistrial, which the trial court denied.[178]  Lirette objected again and stated, "I think the fact that we have to call attention to it at all creates some kind of question in the jurors' minds about, hmmm, you know maybe there is something more here, maybe there's something we don't know."[179]

Milon has made no showing of any significant fact or prejudice which occurred in the bench conferences or how the alleged missing portions of the transcript would have altered the outcome of his appeal.  According to the transcript, Lirette believed that the other jurors had not seen Milon outside the courtroom.   In arguing her motion for mistrial, she made no mention of any belief that other jurors had seen Milon in handcuffs or that the officer who escorted him would have testified that multiple jurors saw Milon handcuffed.  The transcribed portions of the proceedings were more than sufficient for the claim to be decided had it been raised on appeal.  It was not.  Rather, Milon asserted

---

[175]Id., at p. 64.

[176]Id., at pp. 65-71

[177]Id., at pp. 71-72.

[178]Id., at pp. 72-73.

[179]Id., at p. 73.

the issue in his application for post-conviction relief and the record was sufficient for the issue to be decided.

The state courts' decision was neither contrary to nor an unreasonable application of Supreme Court precedent. Thus, Milon is not entitled to federal habeas corpus relief on this claim.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Milon's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[180]

---

[180]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

New Orleans, Louisiana, this _____14th_____ day of May, 2020.


_____

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE