## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DANTE LEON MILON**                                  **CIVIL ACTION**

**VERSUS**                                                       **NO.  19-13061-WBV-JCW**

**DARREL VANNOY, WARDEN**                  **SECTION "D"(2)**

## ORDER

The Court, having considered *de novo* the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254,[1] the record, the applicable law, the Report and Recommendation of the United States Magistrate Judge,[2] Petitioner's Response to the Report and Recommendation,[3] Petitioner's Motion for In Camera Review,[4] and Petitioner's Supplemental Objections to the Magistrate Judge's Report and Recommendation,[5] hereby overrules Petitioner's objections, approves the Report and Recommendation of the United States Magistrate Judge and adopts it as its opinion in this matter.

## I.     PETITIONER'S OBJECTIONS

On October 8, 2019, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.[6] The Petition was referred to a United States

---

[1] R. Doc. 1.

[2] R. Doc. 17.

[3] R. Doc. 19. Although styled as Petitioner's "Response to Magistrate Judge Report and Recommendation," it is clear that this includes Petitioner's Objections to the Magistrate Judge's Report and Recommendation and, having been filed timely, will be considered by the Court as such.

[4] R. Doc. 18.

[5] R. Doc. 20. Petitioner seeks to amend his previous response by including Exhibit A, two letters from an attorney at the Louisiana Appellate Project—one dated January 3, 2013 and one dated January 14, 2013. Both letters have been filed into the record and considered by the Court.

[6] R. Doc. 1.

Magistrate Judge to conduct hearings, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636 and Rule 8(b) of the Rules Governing Section 2254 cases. Thereafter, the State filed an Answer[7] and Petitioner filed a Traverse to the Answer.[8] On May 14, 2020, the United States Magistrate Judge issued a Report and Recommendation to the Court, recommending that the Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.[9] Petitioner then filed a Response which included Objections to the Magistrate Judge's Report and Recommendation.[10] On the same day that Petitioner filed his Response, Petitioner also filed a Motion for In Camera Inspection asking the Court to inspect the record on specific dates of the proceedings.[11]

The Court initially addresses Petitioner's Request for In Camera Inspection of the proceedings which he alleges took place on July 11, 2011, November 28, 2011, and November 29, 2011. The Court notes that it has before it, and has reviewed, the entirety of the nine-volume record of Petitioner's state court proceedings. The Court has reviewed the record, including those dates referenced in Petitioner's Motion which are discussed in more detail herein. Petitioner subsequently filed Supplemental Objections asking that an Exhibit be placed in the record.[12] That exhibit, two letters from an attorney with the Louisiana Appellate Project, has been placed into the record.[13] To the extent the Plaintiff asks the Court to review the state

---

[7] R. Doc. 9.
[8] R. Doc. 16.
[9] R. Doc. 17.
[10] R. Doc. 19.
[11] R. Doc. 18.
[12] R. Doc. 20.
[13] *Id.*

court record on the indicated dates, the Court has done so.  To the extent, Plaintiff argues he is prejudiced because certain proceedings were not transcribed, the Motion is denied for the reasons explained, *infra*.[14] To the extent Plaintiff's Motion for In Camera relief seeks additional relief, it is unclear what relief is sought, and Petitioner's Motion is accordingly denied.

In his Response and Objections, Petitioner generally restates each claim made in his Petition and objects to the Magistrate Judge's findings as a whole regarding those claims. Specifically, Petitioner objects to the Magistrate Judge's findings that (1) a rational trier of fact, after viewing evidence in the light most favorable to the prosecution, could find beyond a reasonable doubt that the prosecution had met its burden of proving second degree murder and that the homicide was not committed in self-defense; (2) there was no prejudicial prosecutorial misconduct either in the prosecutor's voir dire, opening statement, closing argument or through allowing false testimony; (3) the record does not support that Petitioner received ineffective assistance of counsel; and (4) the record of the state proceedings is sufficiently complete to allow for review and resolution of his claims.

## II.    LAW AND ANALYSIS

Notably, Petitioner not only agrees as to the standard of review for federal habeas corpus proceedings as written by the Magistrate Judge, but Petitioner appears to have adopted that portion of the Report and Recommendation, all without objection.[15] Since Petitioner's analysis in this regard is entirely consistent with the

---

[14] *See infra*, Part II.D.
[15] R. Doc. 19 at 7-9.

report issued by the Magistrate Judge, this Court fully adopts the standard of review as enunciated by the Magistrate Judge.[16] The Court has undertaken an exhaustive *de novo* review of the record, including the proceedings for the entirety of Petitioner's state court proceedings, including the proceedings reflected by Minute Entry of July 11, 2011[17] and the transcript of the trial which took place November 28-29, 2011.[18]

## A. Petitioner's Objection Regarding Sufficiency of Evidence to Support Finding of Guilt for Second Degree Murder

Regarding the sufficiency of evidence, Petitioner agrees that the evidence is to be viewed in a light most favorable to the prosecution in order to determine whether a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt and, further, that such a review presents a mixed question of law and fact.[19] Citing La R.S. 14:20,[20] Petitioner argues that the record does not support that he did not act in self-defense.[21]

While Petitioner raised the defense of self-defense during his trial, the evidence presented reveals that Petitioner was seated in his vehicle when the victim approached the vehicle on foot. The Petitioner's own recorded statement to law enforcement indicated that he shot the victim but intended to shoot him in the legs so that Petitioner could get away and only did so because he feared that the victim

---

[16] R. Doc. 17 at 10-12.
[17] State Record, Volume 1 at 145.
[18] State Record, Volume 6. The Court notes that the trial transcript is also included in Volume 1 of the State Record and referred to as such in the Magistrate Judge's Report and Recommendation.
[19] *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008).
[20] La. R.S. 14:20 describes when homicide is justifiable under Louisiana law.
[21] R. Doc. 19 at 10-11.

had a weapon.[22] Notably, the coroner who performed the autopsy on the victim testified that the bullet entered the victim from the left flank, back region of the victim.[23] Further, a witness who was in the vehicle with Petitioner immediately before the shooting advised law enforcement afterwards that Petitioner had indicated that he was going to kill the victim because of a past interaction with the victim. While the same witness testified during the trial that she had not heard that statement directly from the Petitioner, she confirmed that she repeated it to law enforcement but did so only after hearing it from someone else.[24] The Court's review of the evidence does not include a determination of the weight of the evidence or the credibility of the witnesses as those determinations are the exclusive province of the jury.[25] Viewing the evidence presented in a light most favorable to the prosecution, the Court is more than satisfied that the jury could have found that the essential elements of second degree murder had been proven beyond a reasonable doubt. Petitioner's objection regarding the sufficiency of evidence is overruled.

## B. Petitioner's Objection Regarding Prosecutorial Misconduct

Petitioner claims that the prosecutor make improper and inflammatory comments, including stating personal opinions, during voir dire, opening statement, and closing arguments. The Magistrate Judge provided a detailed review of Petitioner's claims, the actual remarks made by the prosecutor, and those statements

---

[22] State Record, Volume 1, Trial Transcript at 29, 33, 41.
[23] *Id.* at 46-56.
[24] *Id.* at 93-95.
[25] *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993).

referenced by Petitioner in support of his claim. That review recognized that Petitioner's claims regarding improper and inflammatory comments and opinions took statements from the prosecutor out of context. A review of the record reveals the entirety of the prosecutor's remarks during voir dire, opening statement, and closing arguments.[26] The Court finds that the prosecutor did not make improper and inflammatory remarks which prohibited Petitioner from receiving a fair trial. Further, the Court has reviewed in detail the trial court's instructions to the jury.[27] The trial judge's instructions to the jury made clear that "[t]he statements and arguments made by the attorneys at any time during the trial are not evidence" and further "[t]he opening statements and closing arguments are not to be considered as evidence."[28] The jury is presumed to have followed the instructions given by the trial judge and the Court is satisfied that these instructions would have cured any inappropriate remark.[29] Following this Court's review of the evidence in the record, Petitioner's objection regarding prosecutorial misconduct is overruled.

### C. Petitioner's Objection Regarding Ineffective Assistance of Counsel

In his original Petition as well as in his Objections, Petitioner claims several specific instances of ineffective assistance of counsel and further argues that the cumulative effect of these specific instances deprived him of effective representation. Petitioner argues that it was ineffective assistance of counsel to fail to investigate the

---

[26] State Record, Volume 6.
[27] State Record, Volume 6, beginning at 260.
[28] *Id*. at 269.
[29] *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Woods v. Johnson*, 75 F.3d 1017, 1036 n.29 (5th Cir. 1996).

case, to fail to move to suppress his statement to law enforcement, to fail to move to suppress his identification by a witness, to fail to object to jurors taking notes, cell phones, and a copy of Petitioner's transcript into the jury room, to fail to question a juror who saw Petitioner in handcuffs during a break in proceedings, and to fail to strike a juror who indicated that he was related to the trial judge.

The record reveals that Petitioner was initially represented by a retained attorney who moved to withdraw on June 15, 2011. The Court ordered the Office of District Public Defender appointed to represent Petitioner that same day.[30] In his Motion for In Camera Inspection filed in this matter, Petitioner requested that this Court review the proceedings of July 11, 2011 to "get the verbal motion by the prosecutor that's missing out of my transcript of dismissing petitioner's previous attorney [sic] motions to suppress in division 'B.'"[31]

The Minute Entry of July 11, 2011 reflects:

> This matter pursuant to previous fixing was called for Trial in the presence of Ms. Kathryn Lirette, with ODPD, attorney for the accused and also in the presence of Mr. Samuel Markus, Assistant District Attorney.
> On motion of Mr. Markus, the Court ordered that this matter be continued to September 12, 2011 and a pretrial be fixed for July 28, 2011, both at 9:00 a.m., in Division 'B.'
> The court ordered that the witnesses, Jana Adams and Jasmine Clay were instructed to return on September 12, 2011.[32]

The record further reveals that, following her appointment, Petitioner's newly appointed attorney, Ms. Lirette, filed a Motion for Bill of Particulars, Motion for

---

[30] State Record, Volume 1 at 127.
[31] R. Doc. 18.
[32] State Record, Volume 1 at 145.

Discovery and Inspection, Motion for Production of Initial Report, Motion Reserving the Right to File Motion to Suppress After Discovery, Motion for Oyer, Motion for Production of the Report of Crime Scene Examinations, and of the Reports and Underlying Data of Scientific Examinations, and Motion for Preliminary Examination on June 24, 2011.[33] Petitioner has alleged that his attorney provided ineffective assistance of counsel, including by failing to subsequently file a motion to suppress his statement. The Court's review of the state record reveals that Petitioner's attorney presented an extensive and vigorous cross-examination of the law enforcement officer who took the Petitioner's statement. In fact, the transcript reveals that defense counsel vigorously cross-examined all of the State's witnesses.[34] During the cross examination of the law enforcement officer who took Petitioner's statement, counsel questioned the officer regarding Petitioner's demeanor during the statement. Counsel further questioned the officer emphasizing the part of Petitioner's statement in which he stated that the victim had previously robbed him or held a gun to Petitioner's head.[35] The Magistrate Judge noted that the trial court concluded that the introduction of Petitioner's statement allowed the defense to argue self-defense without Petitioner having to take the stand, a decision which could well have been part of the defense strategy. Further, the Court notes that Petitioner's statement to law enforcement negated the question of identification since Petitioner admitted shooting the victim, albeit claiming not to have intended to kill him. As

---

[33] State Record, Volume 1 at 134-139.
[34] State Record, Volume 6.
[35] *Id.* at 176-185.

correctly noted several times in the Magistrate Judge's Report and Recommendation, counsel is not ineffective for failing to urge a baseless motion.[36]

Petitioner further alleges that his attorney failed to object to jurors taking notes, using cell phones, or having a copy of the transcript of his statement in the jury room. Petitioner alleges that the jurors were allowed to bring a transcript of Petitioner's statement to law enforcement into the jury room during a break during the trial. The record does not support that claim. In fact, a review of the record reveals the following exchange:

> [ADA] Mr. Markus: Additionally, out of an abundance of caution, Your Honor, I have copies of transcripts. I would ask –we've already pre-set this up. You can hear it, but the volume within the courtroom may make it difficult for some members of the jury. I would ask that the transcripts be passed.
>
> The Court: Ladies and gentlemen, you're going to be handed what is purported to be a transcript of this interview. I want you to understand that this transcript is not evidence. This is just an aid to assist you. As jurors, you will have to determine the evidence based on what comes from the tape recording itself. All right? **You are not allowed to have this in the jury room, so it's important you pay close attention,** but this is just to assist you in listening to the evidence. This is not the evidence. As jurors, you will determine what was said during the court of this conversation. So I want you to understand that this is not a representation that this is accurate. This is what the state purports it to be. You're going to have to determine what's accurate. And that's by listening to that tape itself. All right.[37]

The record reflects that the jury was allowed a five-minute recess while the Assistant District Attorney set up the equipment to view the recording. Upon the

---

[36] *See* R. Doc. 17 at 45 (quoting *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002)).
[37] State Record, Volume 6 at 169-170 (emphasis added).

jurors' return to the courtroom, the recording was played.[38] The Magistrate Judge found that "there is absolutely <u>no</u> evidence that the jurors took the transcripts into the jury room during the short break."[39] Following its review, this Court reaches the same conclusion. Further, while the record does not reflect any evidence that any juror had a cell phone or notes, it does reflect that the trial court reminded jurors several times that they were not to take notes or use or have cell phones during the trial.[40]

Petitioner also claims ineffective assistance of counsel in that his attorney "failed to question and remove a juror who saw him in handcuffs"[41] during a court recess. A review of the state record reveals that the trial court immediately and thoroughly addressed this with the jurors both as a whole and individually when it was brought to his attention that a juror *may* have seen Petitioner in handcuffs.[42] Notably, the record reflects that the court questioned the juror in some detail at which point the juror volunteered that he had not seen Petitioner with handcuffs.[43] The judge then followed up with all the jurors to reiterate the presumption of innocence and burden of proof.[44] The Court also considers that the trial judge noted that Petitioner was dressed in civilian clothes throughout the trial.[45] Petitioner claims ineffective assistance of counsel because his attorney did not ask any questions of the

---

[38] State Record, Volume 6 at 171.
[39] R. Doc. 17 at 51.
[40] State Record, Volume 6 at 186.
[41] R. Doc. 19.
[42] *Id*. at 200-215.
[43] *Id*. Also the Court notes Petitioner's Exhibit A, R. Doc. 20-1.
[44] *Id*.
[45] State Record, Volume 6 at 281.

individual juror. While neither the Assistant District Attorney nor defense counsel questioned the juror following the court's questioning, defense counsel did move for a mistrial, which motion was denied by the court.[46] In addition to the instruction the trial court gave the jury during this point, the trial court again instructed the jury during closing argument regarding the presumption of innocence, burden of proof, and further that the only evidence they were to consider consisted of the testimony from witnesses and exhibits which the court permitted.[47]

Finally, Petitioner claims his attorney was ineffective for failing to either challenge or strike a juror who advised the court during voir dire that he was related by blood to the trial judge. In his Petition and Objections, Petitioner claims that the juror was the nephew of the trial judge.[48] The Court initially notes that the trial judge subsequently advised that he, the trial judge, was neither the uncle nor related within the third degree to the juror.[49] The record is also clear that the juror immediately revealed that he was a blood relation to the Court and further believed that he could be fair and impartial if selected as a juror. Petitioner has not presented any evidence that this juror was biased in any manner. Defense counsel's decision to allow this individual to be seated as a juror is a matter of trial strategy and is afforded a presumption of reasonableness.[50]

---

[46] *Id.*
[47] State Record, Volume 6 at 261.
[48] R. Doc. 19 at 29-31.
[49] State Record, Volume 2, at 844, Statement of Reasons.
[50] *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999); *Hernandez v. Thaler*, 463 Fed. App'x 349 (5th Cir. 2012).

The Supreme Court has made clear that, upon habeas review, "the question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."[51] Further, as well articulated by the Magistrate Judge, the Supreme Court in *Harrington* further recognized the high level of deference owed to a state court's findings under *Strickland v. Washington*.[52] Following the Court's review of the record, the Court overrules Petitioner's objections regarding ineffective assistance of counsel.

### D. Petitioner's Objection Regarding Incomplete State Record

Petitioner's final claim, and objection to the Magistrate Judge's Report and Recommendation, is that the Magistrate Judge was incorrect in finding that the state record was wholly adequate for resolution of his claims. Petitioner asserts that the transcript of the proceedings of July 11, 2011 are missing as well as transcripts of each of the bench conferences during the trial. As noted herein, the proceedings of July 11, 2011 when the trial was continued upon motion of the Assistant District Attorney are reflected by a Minute Entry in the state record.[53] Petitioner argues that the lack of transcription from that date fails to reflect that the Assistant District Attorney moved to dismiss the motions filed by Petitioner's previously retained counsel. Again, the state record reveals that defense counsel, upon being appointed, filed her own defense motions with the court. Petitioner objects to the Magistrate

---

[51] *Harrington v. Richter*, 562 U.S. 86 (2011).
[52] 466 U.S. 668 (1984).
[53] State Record, Volume 1 at 145.

Judge's finding that Petitioner has failed to show any fact or prejudice from the failure to transcribe every single instance of his state court proceedings. This Court agrees that the state record contained in the nine volumes before this Court is wholly sufficient to both raise and resolve any appellate issues.

Following the Court's *de novo* review of the record, the Court overrules Petitioner's Objections. The Court is convinced that the Magistrate Judge's well-reasoned analysis in his Report and Recommendation is correct, and the Court adopts the Report as its own.

Finally, Rule 11(a) of the Rules Governing 28 U.S.C. § 2254 proceedings provides that, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A court may only issue a certificate of appealability if the petitioner makes "a substantial showing of the denial of a constitutional right."[54] The "controlling standard" for a certificate of appealability requires the petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented [are] adequate to deserve encouragement to proceed further.[55] "Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination."[56] After reviewing the record, the Court finds that

---

[54] 28 U.S.C. § 2253(c)(2).
[55] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).
[56] *Fuller v. Johnson*, 114 F.3d 491, 495 (5th Cir. 1997); *Miller v. Johnson*, 200 F.3d 274, 280-81 (5th Cir. 2000).

Petitioner has not made a substantial showing of a denial of a constitutional right.

The Court, therefore, denies Petitioner a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Dante Leon Milon's Petition for Writ of Habeas Corpus

under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the Court **DENIES** Petitioner a certificate

of appealability.

New Orleans, Louisiana, this 3rd day of November, 2020.

**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**